# INSURANCE COMMISSIONER OF THE STATE OF MARYLAND *v.* METROPOLITAN LIFE INSURANCE COMPANY

[No. 39, September Term, 1982.]

*Decided August 5, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Thomas P. Barbera, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

*J. Snowden Stanley, Jr.,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellee.

*Amicus curiae* brief of Health Insurance Association of America filed. *Roger D. Redden* and *David M. Funk* on the brief.

ELDRIDGE, J., delivered the opinion of the Court.

This State's Insurance Code, Maryland Code (1957, 1979 Repl. Vol.), Art. 48A, § 477-O (a), requires all group and blanket health insurance policies to provide reimbursement, under certain circumstances, for services performed by duly licensed social workers.[1] An Act of Congress, designated as

---

1. The statute reads as follows:

"§ 477-O. Reimbursement for service performed by social worker.

(a) Every group or blanket health insurance policy delivered or issued for delivery in this State or issued to a group which is incorporated or has a main office located in this State, or covering persons who reside or work within this State, which provides for reimbursement for any service which is within the lawful scope of practice of a duly licensed certified social worker shall provide such

the "Employees Retirement Income Security Act of 1974," and ordinarily referred to as "ERISA," 29 U.S.C. § 1001 *et seq.,* regulates employee pension and welfare benefit plans. Section 514 (a) of ERISA, 29 U.S.C. § 1144 (a), provides generally for the preemption of state laws relating to employee benefit plans covered by ERISA. But in one of the exceptions to the preemption provision, Congress stated that the provision shall not "be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." § 514 (b) (2) (A) of ERISA, 29 U.S.C. § 1144 (b) (2) (A).[2] Consequently, as the Supreme Court has noted, "ERISA itself . . . explicitly preserves state regulation of 'insurance . . .'," *Alessi · v.*

---

benefit whether the service is performed by a doctor of medicine or by a duly licensed certified social worker who has had at least two years or 3,000 hours of post-masters supervised clinical social work practice in a clinical program as estabished by the Board of Social Work Examiners if the insured or the person covered by the policy was referred to the social worker by a physician."

**2.** Section 514 (a) and (b) of ERISA provides as follows:

"(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003 (a) of this title and not exempt under section 1003 (b) of this title. This section shall take effect on January 1, 1975.

Construction and application

(b)(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

(2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

(B) Neither an employee benefit plan described in section 1003 (a) of this title, which is not exempt under section 1003 (b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

(3) Nothing in this section shall be construed to prohibit use by the Secretary of services or facilities of a State agency as permitted under section 1136 of this title.

(4) Subsection (a) of this section shall not apply to any generally applicable criminal law of a State."

*Raybestos-Manhattan, Inc.,* 451 U.S. 504, 523 n. 19, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). *See Shaw v. Delta Air Lines,* U.S. , 103, S.Ct. 2890, 77 L.Ed.2d 490, 4968, 4969 (1983) ("State laws regulating insurance . . . are exempt from this pre-emption provision . . .").[3] The sole question before us in this case is whether § 477-O (a) of the Maryland Insurance Code, mandating certain coverage in health insurance policies, is a "law . . . which regulates insurance" within the meaning of § 514 (b) (2) (A) of ERISA, and thus is not preempted by the federal statute.

The facts of the case are as follows. As a part of its system of employee benefits, arrived at through the process of collective bargaining, the General Electric Co. (G.E.) has purchased from the Metropolitan Life Insurance Company (Metropolitan) a group health insurance policy which provides benefits for medical expenses incurred by G.E. employees and certain dependents.[4] One provision of the policy generally reimburses group members for mental disorders treated by physicians and psychologists. Reimbursement for services rendered by a qualified social worker is provided for under the policy provision but only in limited circumstances.[5]

---

**3.** The *Alessi* and *Shaw* cases contain detailed discussions of ERISA, the preemption provision, and the underlying legislative history, although neither case was concerned with the clause preserving state laws regulating insurance. *See also* Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980).

**4.** In addition to group health insurance policies (purchased from Metropolitan and other insurance companies), G.E. has included in its employee benefit package personal accident insurance (purchased from Metropolitan) and excess liability insurance; a long term disability income plan; a pension plan; a lay-off benefit plan; a savings and stock bonus plan; a savings and security program; a savings plan; a G.E. stock redemption program; and emergency aid plan; an employee stock ownership plan; and a dental assistance plan. These additional plans are not involved in this dispute; however, it is noteworthy that only a fraction of the total G.E. employee benefit package includes insurance policies.

**5.** More specifically, for the expense to be covered, the social worker, under the supervision of a physician, must furnish the services in the member's home in accordance with a home health care program which must commence within seven days following hospitalization, and which is for the same or a related illness that caused the member's hospitalization.

Based on the above-described provision of the policy, Metropolitan denied liability for the payment of claims filed by two covered G.E. employees. The claims were for psychotherapy services rendered by qualified social workers to whom the employees had been referred by their physicians. It is undisputed that the claims for the psychotherapy are not covered by the insurance policy. On the other hand, "Metropolitan concedes that the services in question would be covered if Section 477-O [of the Maryland Insurance Code] were applicable to the policy," (Metropolitan's brief, p. 2). Displeased with Metropolitan's refusal to pay, the two employees complained to the Insurance Commissioner of the State of Maryland, claiming that the refusal to pay for the services violated § 477-O (a) of the Insurance Code.

Subsequently a hearing was held on two different dates before the Chief Hearing Officer of the Insurance Division. Thereafter, the hearing officer rendered findings and conclusions, in which he rejected Metropolitan's argument that § 477-O (a) was preempted by ERISA and held that Metropolitan had violated the Insurance Code. The Insurance Commissioner ordered Metropolitan to pay the claims of the two employees.

Metropolitan sought judicial review of the Commissioner's order in the Baltimore City Court (now the Circuit Court for Baltimore City), again arguing that § 477-O (a) of the Maryland Insurance Code was not a law regulating insurance and thus was preempted by ERISA. The trial court, however, affirmed, agreeing with the Insurance Commissioner that § 477-O (a) constituted a law regulating insurance and therefore was saved from preemption by § 514 (b) (2) (A) of ERISA.

Metropolitan then appealed to the Court of Special Appeals, which reversed and held that ERISA preempted the application of § 477-O (a). *Metropolitan Life v. Ins. Comm'r,* 51 Md.App. 122, 441 A.2d 1098 (1982). The Court of Special Appeals stated that § 477-O (a) "does not, in the frame of reference of ERISA, regulate insurance," and that, therefore, the Maryland statute was not exempt from

ERISA's preemption provision. 51 Md.App. at 130. Thereafter this Court granted the Insurance Commissioner's petition for a writ of certiorari.

Although the parties in this case have engaged in a broad discussion of ERISA, including the reasons and policies underlying the statute and its general preemption provision, the issue before us is quite narrow. The Insurance Commissioner concedes that if § 477-O (a) of the Maryland Insurance Code is not a law regulating insurance, then its application in this case is preempted by § 514 (a) of ERISA as a law which "relate[s] to any employee benefit plan." On the other hand, it is undisputed that if § 477-O (a) is a law regulating insurance, then it is saved from preemption and requires the payment of the two claims in this case. Therefore, as previously pointed out, the only issue is whether § 477-O (a) is "any law of any State which regulates insurance," as Congress used that phrase in § 514 (b) (2) (A) of ERISA.

Metropolitan asserts that the "sort of State regulation which ERISA intended to preserve" in § 514 (b) (2) (A) is limited to that which is "designed to regulate the solvency or conduct of insurance companies" (Metroplitan's brief, p. 2). In our view, there is no support in the statutory language, the legislative history, or case law, for such a restrictive interpretation of the words "which regulates insurance."

Neither ERISA itself nor the underlying legislative history define the phrase "regulates insurance." Consequently, we must proceed upon the assumption that Congress intended the phrase to have its plain, ordinary meaning. As the Supreme Court recently observed in construing other language in § 514 of ERISA, "[w]e must give effect to this plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning." *Shaw v. Delta Air Lines, supra,*       U.S. at    , 103 S. Ct. at 2900.

Under the plain and ordinary meaning of the language, a statute mandating a particular type of coverage in a category of insurance policies, is a law "which regulates insur-

ance." A great many of the regulations contained in the Maryland Insurance Code, as well as the insurance laws of other states, are provisions mandating specified coverages in various types of insurance policies. Much of the litigation concerning state regulation of insurance involves statutory provisions requiring specified coverages in different classes of insurance policies. *See generally, e.g., Guardian Life Ins. v. Ins. Comm'r,* 293 Md. 629, 446 A.2d 1140 (1982); *Nationwide Mutual Ins. v. Webb,* 291 Md. 721, 436 A.2d 465 (1981); *Insurance Co. of N. Amer. v. Aufenkamp,* 291 Md. 495, 435 A.2d 774 (1981); *Pennsylvania Nat'l Mut. v. Gartelman,* 288 Md. 151, 416 A.2d 734 (1980); *Yarmuth v. Gov't Employees Ins. Co.,* 286 Md. 256, 407 A.2d 315 (1979); *Reese v. State Farm Mut. Auto. Ins.,* 285 Md. 548, 403 A.2d 1229 (1979); *State Farm Mut. v. Ins. Comm'r,* 283 Md. 663, 670-674, 392 A.2d 1114 (1978); *Government Employees Ins. v. Harvey,* 278 Md. 548, 366 A.2d 13 (1976); *Travelers Ins. Co. v. Benton,* 278 Md. 542, 365 A.2d 1000 (1976); *State Farm v. Md. Auto Ins. Fund,* 277 Md. 602, 356 A.2d 560 (1976); *Maryland Auto Ins. Fund v. Stith,* 277 Md. 595, 356 A.2d 272 (1976).[6] A similar line of recent cases could be cited from the reports of any other state. When ERISA was enacted, the members of Congress certainly knew that much of the body of state law regulating insurance concerned required coverages in various categories of insurance. Nevertheless, Congress did not use language distinguishing between this type of regulation and other types. Instead it broadly exempted from the preemption provision state laws regulating insurance.[7]

---

**6.** As many of the above-cited cases point out, clauses in insurance policies, which are inconsistent with statutes mandating certain coverages, are void to the extent of the inconsistency. *See, e.g.,* Nationwide Mutual Ins. v. Webb, 291 Md. 721, 730, 436 A.2d 465 (1981).

**7.** It is noteworthy that in 1979, Congress rejected efforts to preempt regulation concerning required coverages in insurance policies. Senate Bill 209, set forth in 125 Congressional Record 937 (1979), among other things would have amended § 514 of ERISA by adding the following language:

"A State insurance law which provides that a specific benefit or benefits must be provided or made available by a contract or policy of insurance issued to an employee benefit plan is a law which relates to an employee benefit plan within the meaning of subsec-

Moreover, other language in § 514 of ERISA suggests that Congress contemplated a broad exception for state regulation of insurance, banking or securities. Section 514 (b) (2) (A) refers to "*any* law of any State which regulates insurance*," and § 514 (c) (1) provides that "[t]he term 'State law' includes *all laws, decisions, rules, regulations, or other State action* having the effect of law, of any State." 29 U.S.C. §§ 1144 (b) (2) (A) and 1144 (c), emphasis added.

In addition, giving effect to the plain language of § 514 (b) (2) (A), which indicates that Congress intended generally that state laws regulating insurance be excepted from the preemption provision, is consistent with the federal policy, reflected in the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, that the regulation of insurance is primarily a state function. This interpretation is also consistent with the often-repeated principle that " '[p]reemption of state law by federal statute or regulation is not favored,' " *Alessi v. Raybestos-Manhattan, Inc., supra,* 451 U.S. at 522, quoting *Chicago & North Western Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981). And "[w]here . . . the field which Congress is said to have pre-empted has been traditionally occupied by the States, . . . 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress,' " *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). *See de Canas v. Bica,* 424 U.S. 351, 356-357, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976); *Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); *Barnett v. Md. St. Bd. Of Dental Ex.,* 293 Md. 361, 377-378, 444 A.2d 1013 (1982).

Other courts which have considered the issue have also concluded that § 514 (b) (2) (A) of ERISA preserves state

---

tion (a) and is not a law which regulates insurance within the meaning of subparagraph (A). . . ."

This bill, however, was not enacted.

laws mandating certain benefits in insurance policies purchased by employee benefit plans. In *Wadsworth v. Whaland,* 562 F.2d 70 (1st Cir. 1977), *cert. denied,* 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978), while observing that a state may not under §§ 514 (a) and 514 (b) (2) (B) of ERISA directly regulate an employee benefit plan on the theory that the plan serves as a self-insurer of its benefits (562 F.2d at 77), the United States Court of Appeals for the First Circuit went on to hold that under the savings clause for state regulation of insurance, § 514 (b) (2) (A), a state could indirectly affect employee benefit plans by regulating the content of group insurance policies issued to the plan. (*id.* at 78). The *Wadsworth* case involved a New Hampshire statute requiring group health insurance policies to contain specified coverage for the treatment of mental illnesses and emotional disorders. In holding that the statute was not preempted by ERISA and that it applied to a group health insurance policy covering members of an ERISA employee benefit plan, the Court of Appeals stated *(ibid.):*

> "In order to accept plaintiffs' construction, we would have to construe § 514 without its saving clause pertaining to state regulation of insurance. This we cannot do; we must interpret the statute as written. Congress was fully aware of the functions and scope of employee benefit plans and, nonetheless, exempted state laws regulating insurance from preemption."

The court went on to point out that a narrow construction of the exception for state laws regulating insurance (such as advanced by Metropolitan in the present case) would largely emasculate the exception and greatly diminish the states' primacy in regulating insurance *(ibid.):*

> "Such a construction would completely emasculate the saving clause. It is our duty when interpreting an act of Congress to construe it in such a manner as to give effect to all its parts and to avoid a construction which would render a provision surplusage. . . .

"The plaintiffs' interpretation would greatly diminish the state's primacy in regulating insurance. It would nullify all state insurance laws concerning group insurance when the group policy is issued to an employee benefit plan. We do not find, absent a clear statement of intent, that Congress meant to so restrict a state's authority to regulate insurance."

The same result was reached two years later by the Supreme Court of New Hampshire in *Metropolitan Life Ins. Co. v. Whaland,* 119 N.H. 894, 410 A.2d 635 (1979). That case, like the one at bar, involved group health insurance policies issued by Metropolitan as part of a benefit plan for G.E. employees. A state statute required that, in group health insurance policies, expenses for the treatment of mental disorders be reimbursed on a level at least as favorable as expenses for physical ailments. The New Hampshire Supreme Court, in rejecting Metropolitan's argument that the application of the statute to a G.E. employee's claim was preempted by ERISA, pointed to the policy of state primacy in insurance regulation embodied in the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015. The court then reasoned (410 A.2d at 640):

"Furthermore, insurance laws which do not *relate to'* employee welfare plans are clearly not affected by the general superseding provisions of § 1144 (a), and therefore do not need the protection of the saving clause of § 1144 (b) (2) (A) which would be emasculated if indirect regulation of welfare plans by state insurance regulations were forbidden by section 1144 (a).

"Furthermore, a holding that the states cannot regulate benefits granted by group insurers of Erisa welfare benefit plans would leave a void in the regulation of that area because Erisa subjects welfare benefit plans to reporting and fiduciary standards only. Regulation of insurance benefits has

been the domain of the states. *See* Okin, *Preemption of State Insurance, Regulation by Erisa,* 13 Forum 652, 656-57 (1978)."

Other cases are in accord, taking the position that state statutes specifying mandatory minimum benefits in insurance policies are laws regulating insurance within the meaning of the exception in § 514 (b) (2) (A) of ERISA. *Wayne Chemical, Inc. v. Columbus Agcy. Serv. Corp.,* 567 F.2d 692, 699, 700 (7th Cir. 1977); *New Hampshire-Vt. Health Serv. v. Whaland,* 119 N.H. 886, 410 A.2d 642 (1979); *Eversole v. Metropolitan Life Ins. Co., Inc.,* 500 F.Supp. 1162, 1168-1170 (C.D. Cal. 1980); *Cate v. Blue Cross & Blue Shield of Alabama,* 434 F.Supp. 1187 (E.D. Tenn. 1977); *Insurers' Action Council, Inc. v. Heaton,* 423 F.Supp. 921, 926 (D. Minn. 1976). *See Atty. Gen. v. Travelers Ins. Co.,* 385 Mass. 598, 433 N.E.2d 1223 (1982), *vacated and remanded for reconsideration,* U.S. , 103 S.Ct. 3563, 77 L.Ed.2d 1405 (1983). *See also Dawson v. Whaland,* 529 F.Supp. 626, 632 (D. N.H. 1982); *Provience v. Valley Clerks Trust Fund,* 509 F.Supp. 388, 391 (E.D. Cal. 1981); *Brink v. DaLesio,* 496 F.Supp. 1350, 1382 (D. Md. 1980), *aff'd in part and rev'd in part on other grounds,* 667 F.2d 420 (4th Cir. 1981); *St. Paul Elec. Workers Welfare Fund v. Markman,* 490 F.Supp. 931 (D. Minn. 1980).

Turning to the present case, the Insurance Commissioner did not attempt to regulate the benefits of G.E.'s employee benefit plan. He did not attempt to apply a Maryland insurance statute to a self-insured employee benefit plan, which would have presented a serious preemption issue under the so-called "deemer clause" of ERISA (§ 514 (b) (2) (B)) and many of the above-cited cases.[8] Instead, the Commissioner applied a general insurance statute, requiring a specified minimum coverage in *all* group health insurance policies issued in this State, to a group health insurance policy issued by the Metropolitan Life Insurance Company to an employee

---

8. As previously set forth, note 2, *supra,* § 514 (b) (2) (B) of ERISA states, *inter alia,* that an employee benefit plan itself shall not be deemed to be an insurance company for purposes of a state law regulating insurance.

benefit fund. The cases throughout the country have uniformly taken the position that this type of state regulation is permitted by § 514 (b) (2) (A) of ERISA, expressly preserving state laws "which regulate insurance." We agree with those cases.

> *Judgment of the Court of Special Appeals reversed, and case remanded to that Court with directions to affirm the judgment of the Baltimore City Court (now the Circuit Court for Baltimore City).*
>
> *Respondent to pay costs.*