810 A.2d 425

CONNECTICUT GENERAL LIFE INSURANCE COMPANY

v.

INSURANCE COMMISSIONER FOR
THE STATE OF MARYLAND.

No. 98, Sept. Term, 2001.

Court of Appeals of Maryland.

Nov. 4, 2002.

David M. Funk (Derek B. Yarmis of Funk & Bolton, P.A., on brief), Baltimore, for appellant/cross-appellee.

Christina Gerstung Beusch, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, and Lisa Boylan Hall, Assistant Attorney General, on brief), Baltimore, for appellee/cross-appellant.

BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

ELDRIDGE, Judge.

We issued a writ of certiorari in this case to determine whether certain provisions of the Maryland Insurance Code, in the Health Insurance title, are preempted by the federal Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 832, 29 U.S.C. § 1001 *et seq.*

## I.

In 1998, Maryland's General Assembly enacted a comprehensive program establishing standards for health insurers and their agents for reviewing benefit determinations, and providing claimants with an administrative remedy to recover health insurance benefits improperly denied by insurers. *See* Ch. 111 and Ch. 112 of the Acts of 1998, codified in Maryland Code (1997, 2002 Repl.Vol.), title 15, subtitles 10A, 10B and 10C of the Insurance Article.

This legislation, effective January 1, 1999, established standards for licensed health insurers to undertake utilization review, a system used by insurers to determine whether a particular health care service is covered under a health insurance contract.[1] The legislation also dealt with the manner in which these reviews were to be conducted. The new legislation was enacted because of concerns about the "ability of patients and providers to contest decisions rendered by managed care plans," and in recognition of the fact the insurers were increasingly using utilization review in making coverage decisions under health insurance contracts. *See* House Environmental Matters Committee Report on House Bill 3, Health Insurance–Complaint Process for Adverse Decisions and Grievances at 4 (1998).

The 1998 legislation, in subtitle 10A of the Insurance Article, requires a health insurance provider to establish an internal grievance process allowing an insured, who allegedly has been denied medically necessary services covered under an insurance contract, to seek reconsideration. *See* § 15–10A–01 (c), (e); § 15–10A–02.[2] If the insured is not satisfied with the

---

**1.** Section 15–10B–01 of the Insurance Article defines utilization review as "a system for reviewing the appropriate and efficient allocation of health care resources and services given or proposed to be given to a patient or group of patients." That is, utilization review is the process of determining whether the insurer will pay for medical services for a patient, or a group of patients, under a health insurance plan.

**2.** Unless otherwise stated, all statutory references are to the Insurance Article of the Maryland Code (1997, 2002 Repl.Vol., 2002 Supp.).

insurer's decision, the insured can seek external review by filing a complaint with the Maryland Insurance Commissioner, who is the head of the Maryland Insurance Administration. *See* § 15–10A–02 (d); § 15–10A–03. The Commissioner then makes a determination of whether the service was covered and medically necessary. The decision concerning medical necessity may be based "on the professional judgment of an independent review organization or medical expert." § 15–10A–05(a). If the Commissioner finds that the insurer has failed to fulfil its obligations under the insurance contract, the Commissioner may issue an order requiring the insurer to fulfil its contractual obligations, by paying for or providing the health care service that has been denied. § 15–10A–04(c). In addition, the Commissioner may impose any penalty on the insurer, including a fine, which is authorized by the Insurance Article. *Ibid.* The insurer can then request an administrative hearing to challenge the Commissioner's decision, § 15–10A–04(a)(3), and § 2–210 specifies that the hearing is to be "conducted in accordance with Title 10, Subtitle 2 of the State Government Article (Administrative Procedure Act—Contested Cases)."

Subtitle 10B of the Insurance Article outlines procedural and substantive requirements for entities performing utilization review. The utilization review may be conducted by the health insurance company itself, and, if the insurer chooses to do this, it has to be certified as a private review agent by the Commissioner. Alternatively, the health insurance company can assign the task to a third party, who must be a certified private review agent under state law. In order to be certified, a private review agent must submit to the Commissioner, *inter alia,* information regarding the specific criteria that will be used to make the determination of medical necessity in the utilization review, as well as an attestation that the criteria are objective, clinically valid, and compatible with established principles of health care. The agent must also submit the qualifications of the persons performing the utilization review. *See* § 15–10B–05.

Violations of Subtitles 10A and 10B are among the list of prohibited practices in the Unfair Claim Settlement Practices Act, codified in the Insurance Article as § 27–301 *et seq.* The Unfair Claim Settlement Practices Act explicitly states that penalties for violations of the Act are limited to the imposition of administrative penalties on the insurer by the Commissioner; it creates no state cause of action for the insured. *See* § 27–305.

## II.

This case arises from two administrative complaints, MIA Case No. 349–7/00 and MIA Case No. 375–7/00, initiated under § 15–10A. Each complaint sought review by the Maryland Insurance Administration of a decision by Connecticut General to deny benefits under a group health insurance policy issued to an employer pursuant to an employee benefit plan regulated by ERISA.

## A.

In MIA Case 349–7/00, a complaint was filed with the Insurance Administration on May 3, 2000, by an employee who was covered by a group health insurance policy issued by Connecticut General Life Insurance Company to her employer, and who contributed to the premium through payroll deductions. The policy provided comprehensive medical benefits and covered expenses "to the extent that the services or supplies provided were recommended by a Physician and are essential for the necessary care and treatment of an Injury or a Sickness."

The employee had undergone a right and left frontal craniotomy for a brain tumor. She had received acute rehabilitative services at two different facilities for a total of approximately seven weeks. She was then transferred to a nursing home without acute rehabilitative services. The private review agent, acting on behalf of Connecticut General, denied a request for authorization for continued inpatient rehabilitation care. An expedited appeal, through the insurer's internal

process, was filed, but acute care was once again denied. Neither Connecticut General nor its private review agent issued a written decision at the time of the denials. The first written notice was sent a month later, which contained no information regarding the basis for the decision.

The complaint filed with the Maryland Insurance Administration requested review of the denial of benefits, and the Administration undertook an investigation. Connecticut General could not provide the Administration with the medical criteria used to deny the requested care as required by § 15–10A–02(f). Thereafter, the Administration found the following specific violations: Connecticut General had failed to generate a required notice to the member within the required time period, and the notice, when issued, did not include the statutorily required information, § 15–10A–02(f),(i), (j); Connecticut General's private review agent had failed to make an initial determination, and failed to notify the patient or health provider of the denial, within the time prescribed, § 15–10B–08; the insurer had failed to pay benefits for medically necessary services, § 15–10A–04(c); and Connecticut General's failure to pay was arbitrary or capricious, § 27–303(2). The Administration issued an administrative order directing the insurer to pay for the medical services. The order also assessed a penalty of $125,000 against Connecticut General for the violations of the Insurance Article and for failure to comply with two previous orders of the Commissioner. The sanctions were imposed pursuant to § 4–113(d).

### B.

In MIA Case 375–7/00, a complaint was filed with the Maryland Insurance Administration on May 31, 2000. Connecticut General had retrospectively denied coverage to an insured party for a one day inpatient hospital stay following a hysterectomy and related surgical procedures. The patient was covered under a group health insurance policy issued by Connecticut General to her husband's employer, who had established an employee benefit plan, funded by the group insurance policy. The patient's husband contributed to the

premium through payroll deductions. The policy provided comprehensive medical benefits and covered expenses "to the extent that the services or supplies provided were recommended by a Physician, and are essential for the necessary care and treatment of an Injury or a Sickness."

The hospital stay was deemed not medically necessary by the insurer. The denial was made by a pediatrician, even though the patient had undergone gynecological surgery. The patient filed a complaint with the Maryland Insurance Administration following the denial, which then undertook an investigation. As part of this investigation, the Administration referred the file to an Independent Review Organization (IRO), which selects a physician from its panel with the appropriate speciality to review the carrier's medical necessity determination. The IRO physician, a gynecologist, determined that the one day hospitalization was medically necessary. The Administration thereafter determined that the insurer had violated state law by failing to pay benefits for medically necessary services. § 15–10A–04(c). In addition, the Administration found that Connecticut General's denial of benefits was not based on the professional judgment of at least one physician with a certification in the area of the medical service in question, as is required by § 15–10B–07(a)(1). The Administration assessed against Connecticut General an administrative penalty of $2500 for these violations, and ordered the insurer to authorize payment for the hospital stay. ·

### C.

Asserting that both administrative orders were preempted by ERISA, Connecticut General requested a hearing before the Insurance Administration pursuant to § 2–210(a)(2)(ii). This resulted in staying the orders pending a hearing. The two cases were consolidated for hearing purposes, and following the hearing, the Insurance Commissioner issued a Final Order and Memorandum concluding that the administrative orders, and the state laws on which they were based, were not preempted by ERISA.

Thereafter, Connecticut General filed a petition for judicial review in the Circuit Court for Baltimore County and also requested, under § 2–215(d), (f), a stay of the Commissioner's orders. The Circuit Court granted the stay, and, after a hearing, reversed those parts of the Commissioner's orders which required payment for the services. The Circuit Court affirmed those parts of the Commissioner's orders with respect to administrative penalties but stayed its judgment pending appeal. Both Connecticut General and the Insurance Commissioner filed notices of appeal, and this Court issued a writ of certiorari prior to proceedings in the Court of Special Appeals. *Connecticut General v. Insurance Commissioner,* 366 Md. 273, 783 A.2d 653 (2001).

### III.

The sole question before us is whether the Maryland health insurance laws at issue are preempted by ERISA. We shall hold that the state laws, while they relate to ERISA plans, fall under the "savings clause" contained in 29 U.S.C. § 1144(b)(2), as laws regulating insurance and are, therefore, not preempted. The administrative orders issued by the Insurance Commissioner are enforceable in their entirety.

### A.

ERISA was Congress's response to the rapid and substantial "growth in size, scope, and numbers of employee benefit plans," which made them an "important factor" in interstate commerce. 29 U.S.C. § 1001(a). ERISA sets "minimum standards . . . assuring the equitable character of such plans and their financial soundness." *Ibid.* ERISA's policy was to protect the interests of participants in employee benefit plans "by providing for appropriate remedies, sanctions, and ready access to Federal courts." 29 U.S.C. § 1001(b). In an effort to limit differences in administrative requirements imposed on benefits plans, ERISA contains an express preemption provision that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit

plan." 29 U.S.C. § 1144(a). A saving clause limits this preemption, however, by stating that "nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).

This Court previously considered the scope of ERISA's savings clause regarding state regulation of insurance in *Insurance Commissioner v. Metropolitan Life Ins. Co.*, 296 Md. 334, 463 A.2d 793 (1983). In that case we held that a Maryland law that required all group and health insurance policies to provide reimbursement, under certain circumstances, for services performed by duly licensed social workers was "a law . . . which regulates insurance within the meaning of . . . ERISA, and thus is not preempted by the federal statute." *Insurance Commissioner v. Metropolitan Life Ins. Co., supra,* 296 Md. at 337, 463 A.2d at 794 (internal quotation marks omitted). The United States Supreme Court has since affirmed that state laws that regulate similar substantive terms of insurance contracts are not preempted by ERISA. *See, e.g., Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (holding that a Massachusetts law that required health insurance policies and benefit plans to provide mental health coverage was not preempted by ERISA).

More recently, in *Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002), the Supreme Court again considered the issue of state laws that are saved from ERISA preemption as laws regulating insurance. In that case, a Health Maintenance Organization (HMO) challenged an Illinois law requiring an external review by an independent medical expert of a health insurer's denial of coverage of a medical service as not being medically necessary.[3] If the independent expert found that the service was

---

3. The Illinois statute provided as follows:

"**125/4–10. Medical Necessity—Dispute Resolution—Independent Second Opinion**

medically necessary, the law required the health insurer to pay for the service under the insurance policy. The United States Supreme Court held that the law, even though it related to an employee benefit plan covered by ERISA, was saved from preemption because it regulated insurance. In addressing the question of which state laws are saved from preemption, Justice Souter for the Court said, "when insurers are regulated with respect to their insurance practices, the state law survives ERISA." *Rush Prudential HMO, Inc. v. Moran, supra,* 536 U.S. at ——, 122 S.Ct at 2159, 153 L.Ed.2d at 389. In determining whether the Illinois law would survive preemption under ERISA, the Supreme Court began its analysis with a common sense view of the matter, that " 'a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry.' " *Rush Prudential, ibid.,* quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 50, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39, 49 (1987). The HMO in *Rush Prudential* had argued that the state law did not regulate insurance because it was directed at healthcare providers rather than insurers. Nevertheless, the Supreme Court's "common-sense enquiry" focused on whether the law was directed at entities within the insurance industry that bore risk, as a defining characteristic of an insurer, even if such entities provided healthcare services. The Court held that an HMO was both an insurer and a healthcare provider.

---

§ 4–10. Medical Necessity—Dispute Resolution—Independent Second Opinion. Each Health Maintenance Organization shall provide a mechanism for the timely review by a physician holding the same class of license as the primary care physician, who is unaffiliated with the Health Maintenance Organization, jointly selected by the patient (or the patient's next of kin or legal representative if the patient is unable to act for himself), primary care physician and the Health Maintenance Organization in the event of a dispute between the primary care physician and the Health Maintenance Organization regarding the medical necessity of a covered service proposed by a primary care physician. In the event that the reviewing physician determines the covered service to be medically necessary, the Health Maintenance Organization shall provide the covered service. Future contractual or employment action by the Health Maintenance Organization regarding the primary care physician shall not be based solely on the physician's participation in this procedure."

The common sense inquiry was satisfied because the Illinois law was directed at organizations that either provided health care plans or arranged for them to be provided, so long as "any part of the risk of health care delivery rest[ed] upon the organization." *Rush Prudential,* 536 U.S. at ——, 122 S.Ct at 2162, 153 L.Ed.2d at 393 (internal quotes omitted).

The Supreme Court in *Rush Prudential* then proceeded to use a test based on the McCarran–Ferguson Act to confirm that the Illinois law was aimed at regulating the business of insurance. The McCarran–Ferguson Act delegates to the states the authority to regulate insurance.[4] "A law regulating insurance for McCarran–Ferguson purposes targets practices or provisions that 'ha[ve] the effect of transferring or spreading a policyholder's risk; . . . [that are] an integral part of the policy relationship between the insurer and the insured; and [are] limited to entities within the insurance industry.'" *Rush Prudential,* 536 U.S. at ——, 122 S.Ct at 2163, 153 L.Ed.2d at 393–394, quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647, 656 (1982).[5] These three criteria are guideposts, and a practice does not have to satisfy all three in order to fall within the business of insurance and thus survive preemption under ERISA. *See UNUM Life Ins. Co. v. Ward,* 526 U.S. 358, 373, 119 S.Ct. 1380, 1389, 143 L.Ed.2d 462, 476 (1999). The factors are "considerations to be weighed in determining whether a state law regulates insurance, and that none of these criteria is necessarily determinative in itself." *Ibid.* (internal quotations and citations omitted).

The Supreme Court held in *Rush Prudential* that the Illinois law satisfied two of the three criteria based the

---

4. The McCarran–Ferguson Act "mandates that 'no Act of Congress shall be construed to invalidate . . . any law enacted by any State for the purpose of regulating the business of insurance.'" *Rush Prudential,* 536 U.S. at —— n. 4, 122 S.Ct at 2159 n. 4, 153 L.Ed.2d at 389 n. 4, quoting 15 U.S.C. § 1012(b).

5. This forms the basis of what is often referred to as the three-factor McCarran–Ferguson test.

McCarran–Ferguson Act, and thus was saved from preemption under ERISA as a law regulating insurance. The Court stated that the external review mandated by the Illinois law affected the policy relationship between the insurer and the insured by interpreting the insurance contract, and determining the specific obligation of the insurer. According to the Court, contract interpretation is at the "core of the business of insurance." *Rush Prudential,* 536 U.S. at ——, 122 S.Ct. at 2163, 153 L.Ed.2d at 394. Moreover, the Court pointed out that the state law met the criterion of being a practice limited to entities within the insurance industry for the same reasons that it satisfied the common sense view as a law regulating insurance. Thus, the Illinois statute, requiring independent external review of an HMO's medical necessity decision, was held to be a law regulating insurance and, therefore, fell within the ERISA exception.

The Supreme Court's *Rush Prudential* opinion also examined the Illinois law under principles of ordinary conflict preemption, with a state law "losing out if it allows plan participants to obtain remedies . . . that Congress rejected in ERISA." *Rush Prudential,* 536 U.S. at ——, 122 S.Ct. at 2165, 153 L.Ed.2d at 396 (internal quotes and citations omitted).[6] The Illinois law did not provide a new judicial cause of action under state law, and authorized no new form of ultimate relief. The state law effectively replaced the external reviewer's determination of whether the medical service was covered under the terms of the insurance contract, but it did not enlarge the remedy beyond the relief available under an ERISA authorized suit for benefits under 29 U.S.C. 1132(a). *See Rush Prudential,* 536 U.S. at ——, 122 S.Ct. at 2167, 153

---

**6.** Justice Souter for the Court pointed out that the Supreme Court has "yet to encounter a forced choice between the congressional policies of exclusively federal remedies and the 'reservation of the business of insurance to the States.' " *Rush Prudential,* 536 U.S. at ——, 122 S.Ct. at 2165, 153 L.Ed.2d at 396, quoting *Metropolitan Life Ins. Co. v. Massachusetts, supra,* 471 U.S. at 744 n. 21, 105 S.Ct. at 2391 n. 21, 85 L.Ed.2d at 743 n. 21.

L.Ed.2d at 398. The Illinois health insurance law therefore survived under an ordinary conflict preemption analysis.

## B.

■ Turning to the present case, the Insurance Commissioner maintains that the state laws are saved from ERISA preemption because they are laws regulating insurance. Connecticut General contends that the state laws in question do not regulate insurance within the meaning of 29 U.S.C. § 1144(b)(2) and thus are preempted. Connecticut General also contends that, even if the state laws do regulate insurance, they directly conflict with ERISA and the associated regulations adopted by the U.S. Department of Labor, 29 C.F.R. § 2560.503–1.

We disagree. From a common sense view, and in light of the McCarran–Ferguson Act, Subtitles 10A and 10 B and the Maryland Unfair Claim Settlement Practices Act regulate insurance and fall within the savings clause of 29 U.S.C. § 1144(b)(2). These state laws do not directly conflict with the provisions of ERISA or the associated federal regulations. The state laws therefore are not preempted by ERISA.

Subtitles 10A and 10B of the Insurance Article were enacted with the goal of correcting perceived problems within the insurance industry regarding denial of benefits by insurers based on utilization reviews. *See* House Environmental Matters Committee Report on House Bill 3, *supra*, at 4. The purpose of the Act was to give the Insurance Commissioner the authority to make a decision on medical necessity "when a plan determines that a health care service is not necessary, appropriate, or efficient and that it is not a covered benefit." *Id.* at 5. Utilization reviews are concerned with the determination of benefits under an insurance policy, and are a practice associated with the insurance industry. The external review process of the insurer's decision is also concerned with determination of benefits, an issue that arises only within the context of an insurance policy. From a common sense view, these are laws directed at the business of insurance in a

manner similar to the Illinois law involved in *Rush Pruden-tial.*

An examination of the state laws in light of the McCarran–Ferguson Act supports this common sense view. As earlier mentioned, in determining whether a practice falls within the business of insurance for the purposes of the McCarran–Ferguson Act, courts have used three criteria: whether the state law has the effect of transferring or spreading a policyholder's risk; whether the state law targets a practice that is an integral part of the relationship between the insurer and the insured; and whether the state law targets a practice that is generally limited to entities within the insurance industry. *See Rush Prudential,* 536 U.S. at ——, 122 S.Ct at 2163, 153 L.Ed.2d at 393–394. And, to reiterate, a state law does not have to meet all three criteria to be considered as a law regulating insurance for the purposes of the McCarran–Ferguson Act. *See UNUM Life Ins. Co. v. Ward, supra,* 526 U.S. at 373, 119 S.Ct. at 1389, 143 L.Ed.2d at 476.

The Maryland health insurance laws at issue are integral to the policy relationship between the insured and the insurer. Subtitle 10A mandates language in the insurance contract to provide for an external review process. Subtitle 10A and 10B together clarify the procedural and substantive requirements for the internal review process for denial of claims. The state laws provide the insured with legally enforceable rights against the insurer to obtain an "authoritative determination of the [insurer's] ... obligations." *Rush Prudential,* 536 U.S. at ——, 122 S.Ct. at 2164, 153 L.Ed.2d at 394. Such legal rights are at the core of the relationship between the insured and insurer. Thus, the challenged health insurance laws satisfy one of the McCarran–Ferguson Act criteria.

The Maryland laws are also aimed at a practice that is "limited to entities within the insurance industry." *Union Labor Life Ins. Co. v. Pireno, supra,* 458 U.S. at 129, 102 S.Ct. at 3009, 73 L.Ed.2d at 656. There is no question that Subtitles 10A and 10B apply only to entities undertaking utilization

review for the insurance industry. Denial of claims through utilization review is an insurance practice. This McCarran–Ferguson criterion is satisfied for "the same reasons the law[s] pass the commonsense test." *Rush Prudential,* 536 U.S. at ——, 122 S.Ct at 2164, 153 L.Ed.2d at 394.

From both a common sense view and the McCarran Ferguson Act, Subtitles 10A and 10B are laws regulating the business of insurance and fall within the savings clause of ERISA, 29 U.S.C. § 1144(b)(2).

■ Connecticut General contends that the regulation concerning claims procedure adopted by the U.S. Department of Labor, 29 C.F.R. § 2560.503–1, pursuant to 29 U.S.C. § 1133, preempts the state claim procedure. In making this argument, the insurer relies on *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank,* 510 U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993), where the Supreme Court held that the fiduciary standards of ERISA preempted similar state laws, because the application of the state laws would frustrate the purposes of ERISA. While Connecticut General correctly sets forth the holding of *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank,* it is incorrect in its contention that the application of the Maryland laws in question here would frustrate the purposes of ERISA.

Subtitles 10A and 10B outline the requirements of the internal review process of health insurers, and create an additional layer of external review for denial of claims. The external review process determines only whether the insurer has violated the terms of the health insurance contract in denying coverage. As the *Rush Prudential* Court pointed out,

"... ERISA itself provides nothing about the standard [of review]. It simply requires plans to afford a beneficiary some mechanism for internal review of a benefit denial, 29 U.S.C. § 1133(2), and provides a right to a subsequent judicial forum for a claim to recover benefits, § 1132(a)(1)(B). Whatever the standards for reviewing benefit denials may be, they cannot conflict with anything in the

text of the statute, which we have read to require *a uniform judicial regime of categories of relief and standards of primary conduct, not a uniformly lenient regime of reviewing benefit determinations.*" *Rush Prudential,* 536 U.S. at ——, 122 S.Ct at 2169, 153 L.Ed.2d at 401, emphasis added.

The federal regulation, 29 C.F.R. § 2560.503–1(a), prescribes "minimum requirements for employee benefit plan procedures." Nevertheless, states are free to set up their own review procedures as long as there is no direct conflict. *Id.* at § 2560.503–1(k)(1). The federal regulation provides that

> "(2) (i) . . . a State law regulating insurance shall not be considered to prevent the application of a requirement of this section merely because such State law establishes a review procedure to evaluate and resolve disputes involving adverse benefit determinations under group health plans *so long as the review procedure is conducted by a person or entity other than the insurer, the plan, plan fiduciaries, the employer, or any employee or agent of any of the foregoing.*" *Id.* at § 2560.503–1(k)(2)(i), emphasis added.

The challenged Maryland health insurance laws are consistent with the federal regulation in this respect. The external review is conducted by the Insurance Commissioner, with the assistance of an Independent Review Organization or medical expert for medical necessity decisions. §§ 15–10A–05(a), 03(d) of the Insurance Article. Thus, there is no conflict between the state law and the federal regulation.

■■ Under the savings clause of 29 U.S.C. § 1144(b)(2), the states are free to regulate insurance providers as long as the state laws do not violate ERISA's goal of a "uniform judicial regime of categories of relief and standards of primary conduct." *Rush Prudential,* 536 U.S. at ——, 122 S.Ct at 2169, 153 L.Ed.2d at 401. The Maryland Unfair Claim Settlement Practices Act authorizes the Insurance Commissioner to order the insurer to pay for previously denied benefits only if the claim is within the terms of the insurance contract, and to impose penalties for violations of Subtitles 10A and 10B. In

the two complaints here, the Insurance Commissioner's inquiries were limited to determining whether the insurer had fulfilled the terms of the contracts specifying coverage "to the extent that the services or supplies provided were recommended by a Physician and are essential for the necessary care and treatment of an Injury or a Sickness." As in *Rush Prudential,* the review by the Insurance Commissioner "may well settle the fate of a benefit claim under a particular contract, [but] the state statute does not enlarge the claim beyond the benefits available in any action brought under § 1132(a)." *Rush Prudential,* 536 U.S. at ——, 122 S.Ct at 2167, 153 L.Ed.2d at 398.[7] Subtitles 10A and 10B, and the Unfair Claim Settlement Practice Act have the effect of prohibiting the "designing [of] an insurance contract so as to accord unfettered discretion to the insurer to interpret the contract's terms." *Rush Prudential,* 536 U.S. at ——, 122 S.Ct at 2170, 153 L.Ed.2d at 402. These laws, like the Illinois law involved in *Rush Prudential,* do not "implicate ERISA's enforcement scheme at all, and [are] no different from the types of substantive state regulation of insurance contracts" that the Supreme Court has "permitted to survive preemption." *Ibid. See also UNUM Life Ins. Co. v. Ward, supra,* 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (statutes prohibiting the denial of claims based on untimeliness were not preempted); *Metropolitan Life Ins. Co. v. Massachusetts, supra,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (holding that the state mandated benefits statutes were saved from preemption). This Court has also previously held that such substantive state regulation of insurance contracts is not preempted

---

**7.** The Maryland Unfair Claim Settlement Practices Act specifically states that it does not create a private right of action. *See* § 27–301(b)(2). In this respect, the Maryland laws are unlike state laws held to be preempted in other cases. *See, e.g., Pilot Life Ins. Co. v. Dedeaux, supra,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (state common law claim of bad faith for processing of claim under ERISA regulated benefit plan preempted); *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (employee's state law claim of wrongful discharge based on existence of an ERISA pension plan preempted); *Caffey v. UNUM Life Ins. Co.,* 302 F.3d 576 (6th Cir.2002) (state common law tort and contract claims preempted by ERISA).

by ERISA. *See Insurance Commissioner v. Metropolitan Life Ins. Co., supra,* 296 Md. 334, 463 A.2d 793 (state regulation of minimum mandated mental health benefits was not preempted by ERISA).

In light of ERISA's savings clause, the Maryland health insurance laws here involved are not preempted. The administrative orders of the Insurance Commissioner are valid in their entirety.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT WITH DIRECTIONS TO AFFIRM THE ORDERS OF THE INSURANCE COMMISSIONER. COSTS TO BE PAID BY CONNECTICUT GENERAL LIFE INSURANCE COMPANY.*