**Phillip WOODRUFF, Plaintiff**

v.

**HARTFORD LIFE GROUP INSURANCE CO., Defendant**

**No. CIV. RWT 05–867.**

United States District Court, D. Maryland.

July 21, 2005.

Phillip Woodruff, Upper Marlboro, MD, Pro Se.

Derek Barnet Yarmis, Esquire, Kathleen A. Birrane, Esquire, Lisa Boylan Hall, Esquire, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

TITUS, District Judge.

On March 30, 2005 Defendant Hartford Life Group Insurance Company ("Hartford") filed a Notice of Removal, purporting to remove this case to this Court from the State of Maryland Office of Administrative Hearings (OAH).[1] Along with the Notice of Removal, Hartford submitted a copy of what it described as the Complaint that Plaintiff had filed against it in the OAH. On April 12, 2005 and again on April 21, 2005 Plaintiff filed documents with the Court which will be construed as Motions to Remand. On May 12, 2005, Hartford filed its Opposition to Plaintiff's Motions to Remand. Plaintiff filed his Reply on June 23, 2005 and, four days later, the Maryland Insurance Administration ("MIA") filed a Motion to Intervene. The Court now rules, no hearing being deemed necessary. L.R. 105.6.

## BACKGROUND

On July 22, 1996, the Plaintiff, Phillip S. Woodruff ("Mr.Woodruff") was hired as a Financial Associate by the predecessor of Thrivent Financial ("Thrivent"). Bakk Decl. ¶ 8. He was employed with Thrivent until April 8, 2004. While Mr. Woodruff was employed by Thrivent, he was enrolled for coverage under Thrivent's group long-term disability insurance, effective January 1, 2003. The policy was issued by CNA Group Life Assurance Company ("CNA Group Life"), renamed Hartford Life Group Insurance Company in 2004. *Id.* at ¶ 3–4. By letter dated April 3, 2004, Mr. Woodruff filed a claim for long-term disability benefits under the Group Policy. Grow Decl., Ex. 2. By letter dated April 27, 2004, Hartford denied Mr. Woodruff's

claim "after careful review of all the information contained in [his] file at the present time." *Id.*, Ex. 4. Hartford did, however, advise him of his right to appeal its decision and his right to submit any additional medical information within 180 days.

On October 16, 2004, Mr. Woodruff sent a letter to Hartford whereby he noted his disagreement with the denial, and requested formal reconsideration of the decision. *Id.*, Ex. 5. On November 3, 2004, Hartford concluded the review of Mr. Woodruff's request for reconsideration, denied his claims again, and informed him that his file had been closed and no further review would be conducted. On November 29, 2004, Hartford received a letter from the MIA informing it that a complaint had been received regarding Hartford's actions. The MIA's letter stated that it was going to conduct a thorough investigation and requested certain information from Hartford. *Id.*, Ex. 7. On December 23, 2004, the MIA reviewed the information provided by Hartford and concluded that there was no legal basis upon which to dispute Hartford's position. As such, the MIA could not compel any further action. This decision was subject to Mr. Woodruff's right to request a hearing, provided that such request be made within thirty (30) days of the MIA's decision.

On January 20, 2005, Mr. Woodruff requested a hearing in this matter, and the MIA informed Hartford of this request on January 24, 2005. On February 9, 2005, the MIA informed Mr. Woodruff that his request for an administrative hearing concerning his long-term disability policy was granted. The MIA also noted that the request had been forwarded to OAH, the

---

1. The Office of Administrative hearings is an independent unit in the Executive Branch of Maryland government. MD. CODE ANN., STATE GOV'T, § 9–1602 (2004). Under Maryland's Administrative Procedure Act, *id.* at § 10–101 *et seq.* (2004), any agency head has the authority to delegate a contested case hearing to OAH. *Id.* at § 10–205.

entity that would conduct the hearing for the MIA. On February 25, 2005, OAH sent notice that the hearing on Mr. Woodruff's claim of improper denial was scheduled for Monday, April 4, 2005 at 1:00 p.m. *Id.*, Ex. 11. On March 30, 2005, Hartford removed this case from OAH to federal court. Mr. Woodruff seeks a remand.

## DISCUSSION

28 U.S.C. § 1441(a) provides that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Plaintiff contends that this statute contemplates the removal of cases from state courts to federal courts, not state administrative agencies to federal court. Because this case was proceeding before an Administrative Judge in OAH, Plaintiff contends that removal was improper, thus requiring this Court to remand the case to OAH. Although Plaintiff is correct that, by its plain language, the statute contemplates removal of state court proceedings only, some courts have held that certain state agencies can be deemed to be "State courts" within the meaning of § 1441(a). *See Rockville Harley–Davidson, Inc. v. Harley–Davidson Motor Co., Inc.*, 217 F.Supp.2d 673, 676 (D.Md.2002) ("Whether removal can extend to proceedings before administrative agencies has generated substantial debate in the federal courts.")..

As Judge Motz indicated in *Rockville Harley–Davidson*, some circuits have interpreted the term "State court" in a functional manner, "allowing removal in cases in which a state administrative agency functions as a court[,]" but not permitting removal when a state agency's focus is predominantly rule-making or policy-making. *Id.* By contrast, some circuits embrace the clear language of the statute and refuse to countenance removal from any state agency "regardless of how court-like the proceedings may be." *Id.* (citing *Oregon Bureau of Labor & Indus. ex rel. Richardson v. U.S. West Communications, Inc.*, 288 F.3d 414, 419 (9th Cir.2002)). Although *Rockville Harley–Davidson* recognized that the Fourth Circuit had not confronted this issue in the context of removal under § 1441(a), it felt compelled to apply the functional approach because of the Fourth Circuit's decision in *Kolibash v. Comm. on Legal Ethics of the West Virginia Bar*, 872 F.2d 571 (4th Cir.1989), adopting the functional approach for a case removed under § 1442(a).

The various parties vigorously dispute the outcome under the functional approach. Defendant contends that OAH has many characteristics of a court proceedings as well as the authorization to assert and enforce traditionally judicial powers. *See Rockville Harley–Davidson*, 217 F.Supp.2d at 677–78. The Intervenor disputes this characterization of OAH's powers, pointing out that there is only limited discovery in OAH proceedings and an OAH hearing officer does not have the authority to find a party in contempt of a subpoena. *See* Maryland Insurance Commissioner's Motion to Remand at 10–11. Moreover, Intervenor points out that a consideration of the balance of state and federal interests clearly favors a remand. This second point strongly militates towards remanding the case, as the Court is very hesitant to disrupt a carefully constructed Maryland procedural scheme for resolving disputes of this nature. Ultimately, however, whether the Court agrees with Intervenor's analysis is irrelevant to the resolution of this issue. The case must be remanded not because of

application of the functional approach, but rather because of 28 U.S.C. § 1446(b). This provision of the removal statute requires "[t]he notice of removal of a civil action or proceeding [to be] filed within thirty days after the receipt by the defendant, though service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" Although Defendant vigorously asserts to the contrary, it did not file a timely notice of removal in this Court, and therefore this case must be remanded.

Defendant filed a notice of removal on March 30, 2005. Therefore, it must have received, "through service or otherwise," a copy of the initial pleading in this case on or subsequent to February 28, 2005. Although there is more than one plausible interpretation of the phrase "through service or otherwise," the Supreme Court explained that the trigger for the 30–day period was formal receipt by service of process, not actual receipt (such as, for example, faxing the opposing party a "courtesy copy"). *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350–53, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999). Thus, the question presented in this case is whether Defendant received formal service of "a copy of the initial pleading setting forth the claim for relief" before or after February 28, 2005.

Defendant contends that it first received a copy of the initial pleading on March 3, 2005 when it received OAH's Notice of Hearing, "which advised, *inter alia*, that a hearing in 'P.S.W. v. Hartford' had been

**2.** The MIA first sent this letter to Thrivent Financial for Lutherans, but was informed, in a letter dated September 14, 2004, that CNA/Hartford was the proper party to respond to Plaintiff's complaint.

**3.** The Insurance Investigator for the MIA, Michele McCoy, explicitly stated that MIA

scheduled for April 4, 2005, at 1:00 p.m." D's Opp. at 25. To be frank, Defendant's position strains credulity, as it asserts that notice of a hearing is tantamount to a copy of the initial pleading. The Court simply does not accept Defendant's position, and finds there to be numerous prior documents received by the Defendant, all formally sent and received before February 28, 2005, which triggered the 30–day requirement.

On August 9, 2004, the MIA received Plaintiff's complaint, asserting a claim for group disability benefits. After receiving this complaint, the MIA sent a letter to the Defendant, accompanied by the Plaintiff's complaint, requesting that it respond to the Plaintiff's allegations as set forth in the complaint and asking for other specific information (e.g. the date the claim was first received, the reason why payment was delayed, etc.).[2] On December 6, 2004, the MIA received acknowledgment from the Defendant that it had received Plaintiff's complaint. On that same day Defendant sent its responses to the MIA's requests and enclosed a copy of the policy at issue. After reviewing these submissions,[3] the MIA rendered a decision on December 23, 2004 in favor of the Defendant, and informed the Plaintiff of his right to request an administrative hearing within 30 days pursuant to 2–210 of the Maryland Insurance Code and COMAR 31.02.02.

On January 20, 2005, Plaintiff submitted his request for a hearing pursuant to Maryland law. On January 24, 2005, the MIA sent a letter to Defendant which stated as follows:

"received a response regarding [plaintiff's] complaint from The Hartford, which is the insurance carrier for the group long term disability policy offered through Thrivent Financial for Lutherns." MIA letter of Dec. 23, 2004 (Ex. 9).

You have previously been advised of a complaint filed by the above referenced claimant [the plaintiff]. The complainant has now requested a hearing on this matter and the Maryland Insurance Administration is prepared to go forward with this request. We are providing a copy of the request in order to give you the opportunity to reconsider your determination on this matter.

MIA letter of Jan. 24, 2005 (Ex. 11). On February 9, 2005, the MIA sent the Plaintiff notice that his request for a hearing has been approved and that the MIA was forwarding the case to OAH, the entity that would conduct the hearing. The letter further stated that "OAH would notify [the plaintiff] of the date, time and place of the hearing no fewer than ten days before it is scheduled to occur." MIA letter of Feb. 9, 2005 (Ex. 14). On February 25, 2005, OAH sent a letter scheduling the hearing for April 4, 2005 at 1:00 p.m. Defendant received this letter on March 3, 2005, and it is this date that Defendant claims triggers the 30–day time limit set forth in § 1446(b). The Court does not agree.

28 U.S.C. § 1446(b) requires a defendant to file its notice of removal within thirty days after "the receipt . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" Although this provision uses the term "initial pleading," rather than "complaint," the remainder of this clause is conspicuously similar to Federal Rule of Civil Procedure 8(a), which sets forth the requirements for a complaint filed in federal court. The complaint in this case was formally sent to the Defendant on November 23, 2004 along with the MIA's request that Defendant respond to the allegations in the complaint. Hartford did respond to the complaint, which, in the Court's view, is analogous to an Answer. The Answer was sent on December 1, 2004

and received by the MIA on December 6, 2004. Therefore, it is undeniable that on December 1, 2004, the date the Defendant responded to Plaintiff's complaint, the Defendant had received a copy of Plaintiff's "initial pleading setting forth the claim for relief upon which such action or proceeding is based."

Even if the Court did not determine December 1, 2004 to be the date upon which the 30–day time period begins, it could not begin later than whenever Defendant received the MIA's letter of January 24, 2005. In this letter, the MIA informed the Defendant that, while they *have previously been advised of a complaint* filed by the Plaintiff, they are now being advised that a hearing has been requested. The date Defendant received this notice is significant, considering that the statutory framework in Md.Code Ann., Ins. § 2–210(b) ("[a] demand for hearing shall state the grounds for the relief to be demanded at the hearing.") almost tracks the relevant clause in § 1446(b). Thus, in order for Plaintiff to have complied with Md.Code Ann., Ins. § 2–210(b), he had to have filed a pleading setting forth his claim for relief. From the documents filed by the Defendant in compliance with Local Rule 103.5.a, it is clear that Plaintiff did in fact accomplish such filing and the MIA served that pleading on the Defendant.

## CONCLUSION

The case law interpreting § 1441(a) raises an interesting issue regarding a party's ability to remove a case in this posture. Numerous factors influence a court's decision to permit removal or order the case remanded to the state agency from whence it originated. In this case, ferreting out and analyzing the relevant aspects of the state proceedings in order to determine the correct course of action would have

been perhaps stimulating from an academic perspective. That exercise, however, is ultimately unnecessary. This case hinges on a different matter: the timing of the Defendant's notice of removal.

The Defendant first had notice of Plaintiff's claims against it on November 30, 2004 when Defendant formally notified the MIA that it received Plaintiff's complaint. The complaint, unlike the facsimile sent in *Murphy Bros.*, was sent in an official mailing by the very entity before whom this dispute was to be adjudicated. Thus, *Murphy Bros.'* requirement that only official service of the complaint triggers the 30–day time period is satisfied. Moreover, the Defendant received additional notice, and a renewed pleading stating Plaintiff's grounds for relief, sometime shortly after January 24, 2005. As is statutorily required, Plaintiff's request stated "the grounds for the relief to be demanded at the hearing." This formal correspondence between MIA and the Defendant, assuming Plaintiff's initial complaint sent by MIA did not trigger the 30 day time period, falls squarely within the scope of "initial pleading" set forth in § 1446(b).

Because Defendant filed its Notice of Removal more than 30 days after either of these two dates, removal was not proper. Therefore, the Court will, by separate order, grant the Maryland Insurance Administration's Motion to Intervene and remand this case to the Maryland Office of Administrative Hearings.

### ORDER

Upon consideration of the Plaintiff's Opposition to the Notice of Removal and Request for Remand [Paper No. 8], Plaintiff's Request for Remand [Paper No. 10], the Defendant's Oppositions thereto, the Motion to Intervene by the Insurance Commission for the State of Maryland [Paper No. 24], and the accompanying Memorandum Opinion, it is this 19th day of July, 2005, by the United States District Court for the District of Maryland,

**ORDERED**, that the Motion to Intervene by the Insurance Commission for the State of Maryland [Paper No. 24] is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Opposition to the Notice of Removal and Request for Remand [Paper No. 8] and Plaintiff's Request for Remand [Paper No. 10] are construed as Motions to Remand; and it is further

**ORDERED**, that Plaintiff's Motions to Remand [Paper Nos. 8 & 10] are **GRANTED**; and it is further

**ORDERED**, that all further proceedings in this case are remanded to the Office of Administrative Hearings of the State of Maryland; and it is further

**ORDERED**, that the Clerk is directed to CLOSE THE CASE.