Sheldon K. GOTTLIEB,
et. al.   Plaintiffs,

v.

LINCOLN NATIONAL LIFE
INSURANCE COMPANY
Defendant.

No. CIV.A. RDB 05–1602.

United States District Court,
D. Maryland.

Sept. 23, 2005.

Sheldon K. Gottlieb, Potomac, MD, pro se.

Sharon E. Gottlieb, Potomac, MD, pro se.

Bryan D. Bolton, Cheryl A. C. Brown, Funk and Bolton PA, Baltimore, MD, John Van Lear Dorsey, Kathleen A. Birrane, Office of the Attorney General, Baltimore, MD, for Defendants.

### MEMORANDUM OPINION

BENNETT, District Judge.

This action arises out of a complaint that Dr. Sheldon K. and Mrs. Sharon E. Gottlieb (the "Gottliebs"), both Maryland residents, filed with the Maryland Insurance Administration ("MIA") against Lincoln National Life Insurance Company ("Lincoln"), an Indiana company. The complaint alleges that Lincoln misled the Gottliebs into purchasing two life insurance policies in the mid–1980s. MIA conducted an investigation, determined that there was no evidence of misrepresentation, and notified the Gottliebs of their right to a hearing before the Maryland Insurance Commissioner (the "Commissioner"). The Gottliebs exercised that right and the Commissioner subsequently delegated his authority to conduct the hearing to the Office of Administrative Hearings of the State of Maryland ("OAH"). Lincoln then attempted to remove the underlying proceeding from OAH to this Court, alleging that this Court has jurisdiction pursuant to 28 U.S.C. § 1332. Shortly thereafter, MIA requested that the case be remanded to OAH.

Pending before this Court are six motions: MIA's Motion to Strike all filings made by Lincoln or in the Alternative to Remand; and the motions of Defendant Lincoln to Dismiss, to Strike MIA's Motion to Remand, to Stay State Court Proceedings and Request Emergency Hearing, to Shorten Time for Plaintiffs to Respond to Emergency Hearing, and to file Surreply. The parties' submissions have been carefully reviewed. No hearing is necessary. *See* Local Rule 105.6 (D.Md.2004). For the reasons stated below, MIA's Motion to Strike all filings made by Lincoln or in the Alternative to Remand will be GRANTED and all further proceedings in this case will be remanded to the Office of Administrative Hearings of the State of Maryland.

### BACKGROUND

On January 24, 2005, the Gottliebs filed a complaint with MIA alleging that Lincoln misled them into purchasing two life insurance policies in May 1984. (Notice of

Removal Ex. 1.) By letter dated March 3, 2005, MIA informed the Gottliebs that "[o]ur investigation found no evidence of misrepresentation of the policies that were purchased over 20 years ago." (Notice of Removal Ex. 2.) MIA also noted that its determination is final "within this administration level" and advised the Gottliebs of their right to a hearing within 30 days. (*Id.*)

On March 28, 2005, the Gottliebs sent a letter to the Commissioner disagreeing with MIA's determination and requesting a hearing before the Commissioner. (Notice of Removal Ex. 4.) On April 4, 2005, MIA forwarded the Gottliebs' request to Lincoln. (*Id.*) In its cover letter to Lincoln, MIA explained that "[y]ou have previously been advised of a complaint filed by the [Gottliebs]. The complainant has now requested a hearing on this matter and the Maryland Insurance Administration is prepared to go forward with this request." (*Id.*)

On April 19, 2005, MIA informed the parties that the Gottliebs' request for an administrative hearing was approved. (Notice of Removal Ex. 5.) MIA also forwarded this request to OAH, the entity that would conduct the hearing for MIA. (*Id.*) On May 13, 2005, the Commissioner delegated authority to OAH to conduct the hearing requested by the Gottliebs. (Notice of Removal Exs. 6–8.)

On May 18, 2005, OAH sent notice that the hearing was scheduled for Wednesday, July 6, 2005 at 2:30 p.m. (Notice of Removal Ex. 9.) Lincoln received a copy of this notice of hearing on May 26, 2005. (*Id.;* Notice of Removal ¶ 6.) The primary focus of the OAH hearing is whether Lincoln violated § 16–105 or § 27–202 of the Maryland Insurance Article when it sold life insurance policies to the Gottliebs. (*See* Notice of Removal Exs. 6–8.)

On June 13, 2005, Lincoln filed a notice of removal that purported to remove the action from OAH to this Court. On June 20, 2005, Lincoln filed a motion to dismiss the claims asserted in the Gottliebs' complaint. On July 13, 2005, MIA filed a motion to strike all filings made by Lincoln or in the alternative to remand. On August 5, 2005, Lincoln filed a motion to strike MIA's motion. On August 8, 2005, Lincoln filed an emergency motion to stay the state proceedings and request for emergency hearing. On August 15, 2005, Lincoln filed a motion to shorten time for plaintiffs to respond to Lincoln's emergency motion. On September 2, 2005, Lincoln filed a motion for leave to file a surreply.

## LEGAL PRINCIPLES

■ "The burden of establishing federal jurisdiction is placed on the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir.1994) (citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921)). Furthermore, "[b]ecause removal jurisdiction raises significant federalism concerns," courts "must strictly construe removal jurisdiction." *Id.* (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey,* 29 F.3d at 151 (citing *In re Business Men's Assur. Co. of America,* 992 F.2d 181, 183 (8th Cir.1993) and *Cheshire v. Coca–Cola Bottling Affiliated, Inc.,* 758 F.Supp. 1098, 1102 (D.S.C.1990)). This strict policy against removal and for remand protects the sovereignty of state governments and state judicial power. *Shamrock,* 313 U.S. at 108–09, 61 S.Ct. 868.

## DISCUSSION

### 1. Intervention

■ MIA began participating in this action without moving to intervene under Fed.R.Civ.P. 24. Lincoln relies on this

fact to argue that this Court cannot consider the merits of MIA's motions. In response, MIA requests that this Court treat its first motion as a motion to intervene. For reasons explained below, this Court will grant this request and allow MIA to intervene. *Cf. Woodruff v. Hartford Life Group Ins. Co.*, 378 F.Supp.2d 546, 551 (D.Md.2005) (granting MIA's motion to intervene in factual context that is similar to this case).

Intervention is governed by Fed. R.Civ.P. 24, which provides in part that:

(a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) **Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action.

MIA argues that it may intervene in this action on the basis of either Rule 24(a)(2)

or Rule 24(b)(2). *See* Resp. to Lincoln's Mot. to Strike, p. 4.

■ The United States Court of Appeals for the Fourth Circuit interprets Rule 24(a)(2) to entitle an applicant to intervene as a matter of right if the applicant can demonstrate: (1) a significantly protectable interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation. *See Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir. 1991) (citations omitted). Applying this standard, this Court finds that MIA is entitled to intervene in this action as a matter of right.

First, MIA has a significantly protectable interest in the subject matter of this action. MIA has a statutory obligation to oversee and enforce Maryland's insurance licensing and regulatory laws. *See, e.g.*, Md.Code Ann. [Ins.] § 16–106 (2005). The subject matter of this action is the complaint that the Gottliebs filed with MIA on January 24, 2005. MIA's interest in that subject matter is narrow, particular, and jurisdictional, *i.e.*, protecting its position that reviewing Lincoln's conduct under Maryland licensing and regulatory laws is not barred by the settlement of civil contract and tort claims asserted in a class action lawsuit.[1] (*See* Notice of Removal Ex. 6 (MIA "will participate in [the OAH hearing] on the issue of jurisdiction only."); *see also* Lincoln's Reply in Furtherance of Its Motion to Strike MIA's Motion to Strike, Ex. 3, p. 2 (MIA describes its "clear interest in the subject matter of [the OAH hearing]" as the "position that the Commissioner's authority to decide whether a licensee violated state regulations does not fall within the scope of, and is not

---

1. Lincoln alleges that the settlement of a nationwide class action lawsuit in 2001 bars the complaint that the Gottliebs filed with MIA. That lawsuit was venued in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.

barred by, a private class action settlement of civil claims.").).)

Second, MIA's interest would be impaired if this matter were disposed of without MIA. MIA's interest involves reviewing Lincoln's conduct when it sold life insurance policies to the Gottliebs for a very specific purpose: to determine whether that conduct violated Maryland licensing and regulatory laws. If this matter were to proceed without MIA, however, that conduct would be reviewed under Maryland *tort* law, not Maryland *licensing and regulatory* law. Moreover, as Lincoln carefully points out, if this action were to proceed in this Court, MIA would be without jurisdiction to review Lincoln's conduct with respect to the sale of life insurance policies to the Gottliebs. *See, e.g., E.D. Sys. Corp. v. Sw. Bell Tel. Co.*, 674 F.2d 453, 457 (5th Cir.1982) (removal ends the power of the state tribunal and jurisdiction is not restored unless and until the federal court orders a remand).

Third, MIA's interest is not adequately represented by the Gottliebs. The Gottliebs are not represented by counsel and have not opposed Lincoln's removal. This alone makes clear that the Gottliebs are not adequately representing MIA's interest in this forum. Even if the Gottliebs were represented by counsel, the Gottliebs simply lack the ability to assert the same licensing and regulatory claims as MIA. *See* Md.Code Ann. [Ins.] § 27–301 (2005) (no private right of action under the Maryland Code for unfair settlement practices); *see also Teague*, 931 F.2d at 262 (noting that the burden of demonstrating a lack of

adequate representation is "treated as minimal.") (quotations omitted).

■ Finally, this Court is unpersuaded by Lincoln's arguments that intervention should not be allowed because MIA delayed in seeking to intervene and fails to satisfy the technical requirements of Fed. R.Civ.P. 24(c). First, MIA's delay in seeking to intervene is minor and has not prejudiced Lincoln as this matter is in its early stages. Moreover, where intervention is of right, "the timeliness requirement of Rule 24 should not be as strictly enforced as in a case where intervention is only permissive." *Brink v. Da Lesio*, 667 F.2d 420, 428 (4th Cir.1981). Second, even though MIA's motion to intervene was not accompanied by a pleading as described in Rule 24(c), MIA's previously filed motions and accompanying documents set forth sufficient facts and allegations to inform Lincoln of MIA's claims. *See Spring Constr. Co. v. Harris*, 614 F.2d 374, 376–77 (4th Cir.1980) ("Although some cases have held that intervention should be denied when the moving party fails to comply strictly with the requirements of Rule 24(c) the proper approach is to disregard non-prejudicial technical defects.") (citing Wright and Miller, Federal Practice and Procedure § 1914).

For the reasons stated above, this Court finds that MIA's particular concern in the subject matter of this action, *i.e.*, protecting its position that Lincoln's conduct is reviewable under Maryland licensing and regulatory law, is sufficient to allow MIA to intervene as a matter of right for purposes of challenging Lincoln's removal.[2]

---

**2.** Although intervention as of right is most appropriate here, this Court could also allow MIA to intervene on a permissive basis under Fed.R.Civ.P. 24(b). Permissive intervention, moreover, would not destroy diversity jurisdiction in this case because MIA is a non-indispensable party. *See* MIA's Reply to Lincoln's Opposition to MIA's Motion to Strike, p. 5 (explaining that MIA participates in complaint hearings at MIA's discretion); *see also Harris v. Illinois–California Express, Inc.*, 687 F.2d 1361, 1367 (10th Cir.1982) (diversity jurisdiction, once created, is not destroyed by the permissive intervention of a non-indispensable party). The jurisdictional analysis differs with respect to intervention of right under Fed.R.Civ.P. 24(a) because independent jurisdictional grounds are not required for

In light of the dearth of caselaw in this area, however, this Court notes that even if MIA could not intervene pursuant to Fed.R.Civ.P. 24, this Court may consider certain jurisdictional defects *sua sponte.* MIA's argument that Lincoln's removal was improper under 28 U.S.C. § 1441(a) because the underlying action was pending before a state administrative agency and not a state court raises this type of jurisdictional defect.[3] Accordingly, this Court will now consider MIA's arguments for remand.

### 2. Removal—28 U.S.C. § 1441(a)

MIA moves to remand this case on four grounds: first, this Court lacks removal jurisdiction under 28 U.S.C. § 1441(a); second, this Court should abstain from exercising any jurisdiction it has under principles of comity and federalism; third, this Court lacks diversity jurisdiction because MIA is the true plaintiff in this action; fourth, Lincoln's removal was untimely under 28 U.S.C. § 1446(b). For reasons identified below, this Court finds that it lacks removal jurisdiction over this action because MIA (or OAH, acting as its delegate) is not a "court" under § 1441(a). This Court therefore need not reach MIA's alternative grounds for remand.

MIA's chief argument is that Lincoln's removal was improper because the underlying action was pending before a state *administrative agency,* not a state *court* as the plain language of 28 U.S.C. § 1441(a) requires:

intervention of right. *See Hardy–Latham v. Wellons,* 415 F.2d 674, 676 (4th Cir.1968) (noting that "the indisputably valid diversity jurisdiction in the main action will suffice to support jurisdiction over the [intervenor's] claim").

**3.** Courts have considered whether attempting to remove a case that is not before a state court is a jurisdictional or non-jurisdictional

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State *court* of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (emphasis added). As this Court has previously noted, "[w]hether removal can extend to proceedings before administrative agencies has generated substantial debate in the federal courts." *Rockville Harley–Davidson v. Harley Davidson Motor Co., Inc.,* 217 F.Supp.2d 673, 676 (D.Md.2002). In that case, Judge Motz noted that the Fourth Circuit "has yet to decide whether cases may be removed from state administrative agencies pursuant to 28 U.S.C. § 1441." *Id.* at 676. At least two circuits have adopted the functional test to assess the propriety of removal of proceedings before state administrative agencies. *See Floeter v. C.W. Transport, Inc.,* 597 F.2d 1100, 1102 (7th Cir.1979); *Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.,* 454 F.2d 38, 44 (1st Cir.1972). Another circuit refused to allow removal of a case before a state administrative agency that lacked "the attributes of a court," but did not apply the functional test. *Sun Buick v. Saab Cars USA,* 26 F.3d 1259, 1267 (3rd Cir.1994). Finally, at least one circuit has found that actions before state administrative agencies may never be removed to federal court under § 1441. *See Oregon*

defect. *See, e.g., International Union of Operating Engineers v. Morse,* 529 F.2d 574, 577 n. 1 (7th Cir.1976) (treating state court defect as non-jurisdictional); *Sun Buick v. Saab Cars USA,* 26 F.3d 1259, 1261 (3d Cir.1994) (state court defect is jurisdictional); *Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.,* 454 F.2d 38 (1st Cir.1972) (treating state court defect as jurisdictional). The Fourth Circuit has not addressed this issue.

*Bureau of Labor & Indus. ex rel. Richardson v. U.S. West Commc'ns, Inc.,* 288 F.3d 414, 419 (9th Cir.2002).

■ In *Rockville Harley–Davidson,* Judge Motz noted that while the Fourth Circuit has not resolved whether removal extends to proceedings before administrative agencies under § 1441, it has applied a functional test in the context of the federal officer removal statute, 28 U.S.C. § 1442. *See Rockville Harley–Davidson,* 217 F.Supp.2d at 676 (citing *Kolibash v. Comm. on Legal Ethics of the West Virginia Bar,* 872 F.2d 571, 576 (4th Cir.1989)). That functional test involves two steps:

> First, this Court must evaluate "the functions, powers, and procedures of the state tribunal" in order to consider whether the entity functions as a court. Second, this Court must consider "the respective state and federal interests in the subject matter and in the provision of a forum." The federal court should assume jurisdiction only if the agency functions as a court and federal interests predominate over state interests.

*Rockville Harley–Davidson,* 217 F.Supp.2d at 676–77 (citations and quotations omitted). In *Woodruff v. Hartford Life Group Ins. Co.,* 378 F.Supp.2d 546 (D.Md.2005), Judge Titus of this Court specifically discussed the functional approach in the context of the Office of Administrative Hearings of the State of Maryland ("OAH") conducting a hearing on behalf of the Maryland Insurance Administration ("MIA"). *Id.* at 548. He noted that this Court "is very hesitant to disrupt a carefully constructed Maryland proce-

dural scheme for disputes of this nature." *Id.* at 548.[4] One other district court within the Fourth Circuit has also applied the functional test to determine whether a matter before a state administrative agency was properly removed under § 1441(a). *See Ginn v. North Carolina Dep't of Corr., Div. of Prisons,* 829 F.Supp. 804, 806–07 (E.D.N.C.1993).

■ This Court will apply the functional test to resolve the present dispute between Lincoln and MIA.[5] Applying this test, this Court finds that even though MIA utilizes many court-like procedures, it lacks traditional judicial powers and therefore is not the functional equivalent of a court. Additionally, Maryland's strong interest in enforcing its insurance licensing and regulatory scheme dwarfs any federal interest in the provision of a forum. As a result, remand is required.

MIA does not exercise traditional judicial powers. For example, MIA cannot enforce subpoenas through a contempt power. *See* Md.Code Ann. [Ins.] § 2–203(b)(2) (2005). Instead, MIA must petition a state court for an order directing compliance with the subpoena and imposing appropriate penalties. *Id.* MIA's decisions, moreover, are appealable to state circuit court. *See* Md.Code Ann. [Ins.] §§ 2–215 & 27–306 (2005); *see also* Md. Code Ann. [State Gov't] § 10–222 (2005). Finally, in order to enforce its decisions, MIA must bring a separate action in state circuit court. *See* Md.Code Ann. [Ins.] § 2–201(a) (2005); *see also* Md.Code Ann. [State Gov't] § 10–222.1 (2005).

---

**4.** Judge Titus did not need to resolve this issue as he remanded the case because of the defendant's failure to file a notice of removal within 30 days after receipt of the claim for relief as required by 28 U.S.C. § 1446(b). *See Woodruff,* 378 F.Supp.2d at 551–51.

**5.** Although Lincoln removed the underlying proceeding from OAH, this Court's analysis

refers primarily to the MIA. The reason is that OAH is acting as MIA's delegate in the underlying proceeding and, as a result, the limitations that determine whether that proceeding is a "state court" for removal purposes derive in large part from the statutes and regulations that govern MIA.

MIA can provide only limited remedies and relief. For example, the Unfair Claim Settlement Practices Act, which is part of the Maryland insurance article, "does not provide or prohibit a private right or cause of action to, or on behalf of, a claimant or other person in any state." Md.Code Ann. [Ins.] § 27–301 (2005); *see also Hartz v. Liberty Mut. Ins. Co.*, 269 F.3d 474, 476 (4th Cir.2001) ("Indeed, the provisions of the Maryland Code for unfair settlement practices provide only for administrative remedies."); *Conn. Gen. Life Ins. Co. v. Ins. Comm'r for Md.*, 371 Md. 455, 810 A.2d 425, 427–28 (2002), *cert. dismissed*, 538 U.S. 1027, 123 S.Ct. 1964, 155 L.Ed.2d 876 (2003). Although MIA is authorized to make license determinations, issue orders, impose penalties on licensees, and order licensees to make limited restitution to claimants who have suffered actual economic damages, *see, e.g.*, Md.Code Ann. [Ins.] §§ 4–113 & 27–305 (2005), MIA lacks the power to enforce any such orders. *See* Md.Code Ann. [Ins.] § 2–201(a) (2005). Finally, MIA's ability to issue injunctive-like relief is severely limited. Md.Code Ann. [Ins.] § 27–103 (2005).

The parties vigorously dispute the significance of the preclusive effect of rulings made by MIA. Lincoln uses this fact as a premise in its argument that MIA functions as a court. MIA, however, contends that while preclusive effect reveals something about the nature of the underlying proceeding, *e.g.*, that the issue was actually litigated and the participants were given an opportunity to be heard, it does not indicate action by a court or an administrative agency. This Court concludes that preclusive effect is simply a consequence of the fact that MIA, like many other state administrative agencies, employs adjudicatory procedures in carrying out its statutory mandate. *See, e.g., White v. Prince George's Co.*, 282 Md. 641, 658, 387 A.2d 260 (Md.1978) (finding that *res judicata* applied to Tax Court decision even though

it was "an administrative agency performing a quasi judicial function, as opposed to a court performing a judicial function."); *see also Bethesda Ford, Inc. v. Ford Motor Co.*, 572 F.Supp. 623, 629–32 (D.Md.1983) (analyzing MIA findings for preclusive effect and finding issue preclusion but no claim preclusion).

This Court's finding that the limitations on MIA's adjudicative powers "render it more like a quintessential agency than the functional equivalent of a court" does not change when the aspects of the underlying proceeding that Lincoln emphasizes are taken into account. *Rockville Harley–Davidson*, 217 F.Supp.2d at 678. One such aspect concerns court-like procedures employed by MIA. These procedures, however, are insufficient to qualify an administrative proceeding as the functional equivalent of a court. This is especially true where state agency is "merely employ[ing] adjudicatory procedures in limited circumstances relating to its duties as a licensor." *Id.* at 678–79. Lincoln also focuses on the proposition that the Gottliebs could have brought their complaint in court. Even if true, this proposition sheds no light on the limitations that Maryland placed on MIA's administrative process. *Id.* at 678 ("It is these limitations on the administrative process that [the plaintiff] initiated which are properly evaluated as part of the functional test, not whether [the plaintiff] should have or could have brought a similar complaint in court.").

A consideration of the respective state and federal interests also supports remand. This second component of the functional test has been called the "more critical inquiry." *Rockville Harley–Davidson*, 217 F.Supp.2d at 679 (quotations omitted). This Court must balance the "state's interests in using administrative agencies as a whole, against any federal claim present in the action." *Ford Motor*

*Co. v. McCullion,* 1989 U.S. Dist. LEXIS 19116, 1989 WL 267215, *6 (S.D.Ohio 1989). In addition, this Court must consider the federal interest in the provision of a forum. *See Floeter,* 597 F.2d at 1102; *Volkswagen,* 454 F.2d at 44.

The state's interests in this dispute are substantial. The Fourth Circuit describes the "established administrative process" that Maryland has constructed for resolving insurance complaints as follows:

> MIA is an independent agency that regulates Maryland's insurance companies, agents, and brokers by enforcing the state's insurance laws. MIA is responsible for, *inter alia,* investigating consumer complaints about insurance coverage, licensing insurance companies, and investigating acts of insurance fraud. Consumers [ ] may file complaints with the Consumer Complaint Investigation Section of MIA, which investigates and resolves complaints made by policyholders. For example, claims can be filed for alleged unfair settlement practices, which include misrepresenting pertinent facts or policy provisions, refusing to pay a claim for an arbitrary or capricious reason, and failing to settle a claim promptly. MIA not only has the power to fine insurance companies, but may, after repeated violations, revoke the company's license to sell insurance in Maryland.

*Hartz v. Liberty Mut. Ins. Co.,* 269 F.3d 474, 475–76 (4th Cir.2001) (citations omitted). This Court, moreover, has previously noted that consideration of Maryland's interest in this process "strongly militates towards remanding the case." *Woodruff,* 378 F.Supp.2d at 551.

In contrast, the federal interest in the underlying dispute is slight. No issue of federal law is involved. The cases that Lincoln relies on are distinguishable from the instant facts. *See Rockville Harley-Davidson,* 217 F.Supp.2d at 679–80 (distinguishing *Kolibash, Floeter,* and *Volkswagon* ). Lincoln's remaining argument—that the federal interest in the underlying dispute stems from the full faith and credit clause and the Full Faith and Credit Clause Act—is premature because it appears to assume that a Maryland state court has already acted. This Court finds that the federal interest at stake in this dispute, including providing a forum to diverse parties, is "inadequate in light of the state's substantial interest in administering a state program and preserving the oversight role of a state agency." *Id.* at 680.

### CONCLUSION

For the reasons stated above, MIA's Motion to Strike all filings made by Lincoln or in the Alternative to Remand will be construed in part as a motion to intervene and GRANTED. All further proceedings in this case are remanded to the Office of Administrative Hearings of the State of Maryland under 28 U.S.C. § 1447(c).