**Ross FULLER, Trustee of the International Association of Entrepreneurs of America Benefit Trust**

**v.**

**Dwight K. BARTLETT, III, Commissioner, Maryland Insurance Administration, individually and in his professional capacity.**

**UNITED SERVICE ASSOCIATION FOR HEALTH CARE, et al.**

**v.**

**Dwight K. BARTLETT, III, Commissioner Maryland Insurance Administration.**

Civ. Nos. L–94–2443, L–94–2460.

United States District Court,
D. Maryland.

July 20, 1995.

Richard J. Magid, and Paul W. Madden, Baltimore, MD, for plaintiff Fuller.

Bryan D. Bolton, MD, and Derek Barnet Yarmis, Baltimore, and Hector DeLeon, of Austin, TX, for plaintiffs United Service Ass'n for Health Care and USA for Health Care Benefit Trust.

J. Joseph Curran, Jr., Atty. Gen. of Maryland and Dennis W. Carroll, Jr., and Christina Beusch, Asst. Attys. Gen., for defendant.

## MEMORANDUM

LEGG, District Judge.

Plaintiffs have instituted these actions to prevent the Maryland Insurance Administration ("MIA") from enforcing its regulations against them. At this stage of the proceedings, plaintiffs have moved for a preliminary injunction against MIA, and MIA has resisted. For the reasons below, the Court shall DENY plaintiffs' motions and DISMISS the cases in accordance with the principles of

*Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

## I. BACKGROUND

### A. *Fuller v. Bartlett, No. L–94–2442*

The relevant facts in both cases are undisputed. Ross N. Fuller, the plaintiff in *Fuller v. Bartlett,* No. L–94–2442, is the Trustee of the International Association of Entrepreneurs of America Benefit Trust ("IAEA"). IAEA administers an employee welfare benefit plan which, according to Fuller, is established and maintained by a group of employers for the purpose of providing its participants and their beneficiaries various health benefits, including medical, occupational and death benefits.

Defendant Dwight K. Bartlett, III serves as the Insurance Commissioner for the State of Maryland ("Commissioner") and the head of the MIA. Md.Code Ann. art. 48A § 14. In this position, he enforces the Maryland Insurance Code. § 24. To carry out this responsibility, he may issue orders, § 29, institute legal proceedings, § 25, promulgate rules and regulations, § 26, and hold administrative hearings, § 35. Aggrieved parties may appeal the Commissioner's orders and adjudicatory rulings to the Maryland state courts, which may reverse for prejudice, insufficient evidence or legal error § 40(1), (4).

On September 1, 1994, Fuller filed a declaratory judgment action under 28 U.S.C. § 2201 in this Court, seeking to preclude the Commissioner from regulating IAEA's benefit plan. The complaint charges the Commissioner with violating the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, and Fuller's civil rights under 42 U.S.C. § 1983. According to the complaint, IAEA's benefit plan constitutes a multiple employer welfare arrangement ("MEWA") within the meaning of ERISA, *see* 29 U.S.C. § 1002(40), and as such ERISA pre-empts the Commissioner's attempt to regulate it. The complaint asks for a declaratory judgment in Fuller's favor and for an injunction prohibiting the Commissioner from taking any action against IAEA's plan.

On September 13, 1994, the MIA issued a Cease and Desist Order against IAEA, ordering it to cease operation of its employee benefit plans on the ground that it was conducting the business of insurance in the State of Maryland without a certificate of authority from the Commissioner. In response, Fuller requested a temporary restraining order from this Court. The same day, Fuller asked the Commissioner for an administrative hearing, which automatically stayed the Cease and Desist Order. Md.Code Ann. art. 48A, § 36. The Court later denied the temporary restraining order.

Subsequently, Fuller filed the instant motion for a preliminary injunction, seeking to enjoin the Commissioner from conducting the hearings Fuller had requested. The Commissioner's counsel agreed to stay the administrative proceedings until the Court's ruling on the preliminary injunction motion.

### B. *United Service Association for Health Care v. Bartlett, No. 24–2460*

United Service Association for Health Care ("USA+"), the plaintiff in *United Service Association for Health Care v. Bartlett,* No. 24–2460, is an association of small businesses that offers a variety of human resources services to its members. These services include health benefits to USA+'s members and their employees through an employee welfare benefit plan.

On August 24, 1994, MIA issued a Cease and Desist Order against USA+ similar to the one against Fuller. The Order directed USA+ to cease its health benefits activities on the ground that USA+ was conducting the business of insurance in Maryland without authorization from the Insurance Commissioner.

USA+ responded by filing a declaratory judgment action against the Commissioner under ERISA and § 1983, alleging violations of ERISA and the United States and Maryland Constitutions. As in *Fuller,* the complaint alleges that USA+'s benefit plan is a MEWA and that ERISA therefore pre-empts the Commissioner's efforts to enforce Maryland's insurance regulations against it. The complaint seeks a declaration in USA+'s favor and an injunction preventing the Com-

missioner from taking any further action against the plan.

At the same time it filed the complaint, USA+ requested an *ex parte* temporary restraining order, which was denied. USA+ then requested an administrative hearing with the MIA to stay the Commissioner's Order. Shortly thereafter, the Court consolidated the *United Services Association* action with the *Fuller* case.

On February 3, USA+ moved for a preliminary injunction to prevent the Commissioner from conducting the hearing USA+ had requested. Again, the Court conducted a telephone conference during which the Commissioner's counsel agreed to stay the pending administrative proceedings until the Court's ruling.

## II. *DISCUSSION*

### A. *Federal Question Jurisdiction*

■ First, the Commissioner argues that the Court lacks jurisdiction over these cases because the complaints fail to state a federal question. *See* 28 U.S.C. § 1331. The Supreme Court put this argument to rest in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). There, plaintiffs brought declaratory judgment actions seeking an injunction against a New York state official, arguing that ERISA pre-empted certain New York regulations. *Id.* at 92, 103 S.Ct. at 2897. Speaking to the issue of federal question jurisdiction, the court held "a plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute ... presents a federal question which the federal courts have jurisdiction ... to resolve." *Id.* at 96 n. 14, 103 S.Ct. at 2899 n. 14; *accord Aluminum Co. v. Utilities Comm'n of North Carolina*, 713 F.2d 1024, 1028 (4th Cir.1983), *cert. denied*, 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984). The existence of federal question jurisdiction in such a case, the Court held, was "beyond dispute." *Shaw*, 463 U.S. at 96 n. 14, 103 S.Ct. at 2899 n. 14 (citing *Ex parte Young*, 209 U.S. 123, 160–62, 28 S.Ct. 441, 454–55, 52 L.Ed. 714 (1908)). The procedural similarity between the suits at bar and *Shaw* compels

the conclusion that the Court possesses jurisdiction over plaintiffs' claims.

### B. *Younger Abstention*

■ Next, the Commissioner argues that the Court should refuse to entertain these cases pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In *Younger*, the Supreme Court held that "interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237–38, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984). The *Younger* doctrine applies to state proceedings bearing "a close relationship to proceedings criminal in nature," *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982), including state administrative proceedings such as the ones at issue here. *E.g., Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994).

In *Middlesex, supra*, the Supreme Court set forth three guidelines for deciding whether to abstain from entertaining a civil suit. First, the Court must determine whether there exist ongoing state judicial proceedings in the matter. *Middlesex*, 457 U.S. at 432, 102 S.Ct. at 2521. Second, the Court must ascertain whether the state proceedings implicate important state interests. *Ibid.* Third, the Court must verify that the state proceedings afford an adequate opportunity for the plaintiffs to raise their federal claims. *Ibid.; Martin Marietta*, 38 F.3d at 1396; *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 251 (4th Cir.1993). The Court weighs these factors in turn.

### 1. *Ongoing State Judicial Proceedings*

*Younger* mandates abstention "only when state court proceedings are initiated 'before any proceedings of substance on the merits have taken place in the federal court.'" *Midkiff*, 467 U.S. at 238, 104 S.Ct. at 2328 (quoting *Hicks v. Miranda*, 422 U.S. 332,

349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975)). If the state proceeding commences after the federal court takes "substantial" action on the case, "considerations of economy, equity, and federalism counsel against *Younger* abstention.... " *Midkiff,* 467 U.S. at 238, 104 S.Ct. at 2328. On the other hand, if "the federal litigation [is] in an embryonic stage and no contested matter ha[s] been decided," *Younger* directs the dismissal of the action. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 929, 95 S.Ct. 2561, 2566–67, 45 L.Ed.2d 648 (1975).

■ Under Maryland law, the MIA proceedings began when plaintiffs requested hearings on the Cease and Desist Orders. Md.Code Ann. art. 48A, § 35(1), (2). Thus, the question becomes whether "proceedings of substance" took place in this Court before plaintiffs made their requests.

The Court answers the question in the negative. The denials of plaintiffs' temporary retraining orders do not qualify as "proceedings of substance." *See, e.g., Doran,* 422 U.S. at 929, 95 S.Ct. at 2566–67 (*Younger* abstention proper after denial of temporary restraining order); *Hicks,* 422 U.S. at 338, 349–50, 95 S.Ct. at 2286, 2291–92 (same). The Court did nothing else before the state proceedings commenced, and none of the Court's actions since then have addressed the merits of these cases.[1] Therefore, the state proceedings were "ongoing" before substantive proceedings occurred in federal court.

■ Second, the Court must determine whether the proceedings are "judicial" in nature. As the Supreme Court has reminded, "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist.... The nature of the final act determines the nature of the previous inquiry." *New Orleans Pub. Serv., Inc., v. Council of New Orleans,* 491 U.S. 350, 370–71, 109 S.Ct. 2506, 2519–20, 105 L.Ed.2d 298 (1989) (*"NOPSI"*) (quoting *Prentis v. Atlan-*

tic Coast Line Co., 211 U.S. 210, 226–27, 29 S.Ct. 67, 69–70, 53 L.Ed. 150 (1908)).

The MIA hearing will, if allowed to proceed, determine whether plaintiffs may operated their benefit plans under Maryland law and whether the agency may prevent the operation of the benefit plans. In other words, the MIA hearing will address present facts under an existing legal standard. It therefore constitutes an adjudicatory action under the *Prentis* formulation.

USA+, however, contends that the hearing is not an adjudicatory action, because (1) the action was not initiated at the request of a "third person," but as a result of the Commissioner's investigation; (2) the Commissioner is attempting to exercise his statutory authority at the hearing rather than acting as an impartial arbiter; and (3) MIA hearing procedures differ from those of a trial in court.[2] The Court addresses these contentions seriatim.

As to the first argument, that a third party did not initiate the administrative hearings does not render the function non-adjudicatory. For example, in *Dayton Christian Schools,* the state agency initiated formal administrative proceedings by filing a complaint itself, *Dayton Christian Schools,* 477 U.S. at 624, 106 S.Ct. at 2721, yet the court found *Younger* abstention appropriate there.

■ As to the second argument, a state agency may, contrary to USA+'s contention, review the legality of its own executive or legislative actions, provided that the individual who took the contested action is not also the hearing examiner. *Prentis,* 211 U.S. at 225, 29 S.Ct. at 69; *see Withrow v. Larkin,* 421 U.S. 35, 51–52, 95 S.Ct. 1456, 1466, 43 L.Ed.2d 712 (1975) (combination of judicial and investigative function in state agency permissible). For instance, the state agency in *Dayton Christian Schools* made a preliminary determination that the appellee had violated state law, then initiated formal judicial proceedings within the same agency, *Dayton*

---

1. So far, the Court has struck the Commissioner's motions to dismiss and ordered discovery in both cases because the motions included materials outside the pleadings. *See* Fed.R.Civ.P. 12(b). The Court has also granted the Commissioner's motion for a protective order in *Fuller.*

2. USA+'s Supplemental Memorandum in Support of Plaintiff's Motion for a preliminary Injunction at 11–12.

*Christian Schools,* 477 U.S. at 624, 106 S.Ct. at 2721, yet the court in that case noted no impropriety.

With respect to USA+'s third argument, the nature of an agency action does not depend on the form of the proceedings. *NOPSI,* 491 U.S. at 371, 109 S.Ct. at 2520 (citing *Prentis,* 211 U.S. at 226–27, 29 S.Ct. at 69–70). Therefore, the absence of formalities in a MIA hearing does not convert the hearing into a non-adjudicatory function.

To summarize, the MIA hearings qualify as ongoing state judicial proceedings under *Younger* and *Middlesex.* The Commissioner has therefore satisfied the first prong of the *Middlesex* test for *Younger* abstention.

2. *The Importance of the State's Interests*

■ Second, the Court looks to the importance of the State's interest in the MIA proceedings. *NOPSI,* 491 U.S. at 365, 109 S.Ct. at 2516–17. In this context, the inquiry becomes whether the state has a "substantial, legitimate interest" in regulating insurance. *Ibid.*

As the Fourth Circuit has recognized, states have a "substantial" interest in the regulation of insurance. *Charleston Area Medical Center, Inc. v. Blue Cross and Blue Shield Mut. Inc.,* 6 F.3d 243, 250 n. 5 (4th Cir.1993); *see SEC v. Variable Annuity Life Ins. Co.,* 359 U.S. 65, 69, 79 S.Ct. 618, 621, 3 L.Ed.2d 640 (1959) (regulation of insurance "has traditionally been under the control of the States."); *Fuller v. Ulland,* 858 F.Supp. 931, 935 (D.Minn.1994). The importance of Maryland's interest in regulating insurance strongly favors abstention. *Charleston Area Medical Center,* 6 F.3d at 250 n. 5.[3]

3. *Opportunity to Raise Federal Challenges in State Proceeding*

Third, the Court must determine whether plaintiffs may raise their pre-emption challenge in the state proceedings. An opportunity to raise the federal challenge in a state

judicial review of the administrative proceeding satisfies this requirement. *Dayton Christian Schools,* 477 U.S. at 629, 106 S.Ct. at 2723.

Plaintiffs do not deny that they may raise their pre-emption defense at the MIA hearing, nor could they. *See Ins. Comm'r v. Metropolitan Life Ins. Co.,* 296 Md. 334, 338, 463 A.2d 793, 795 (1983) (describing insurance company's assertion of ERISA preemption defense at MIA hearing). Even if they could not, the state court, on review, may reverse or modify the decision if it contains legal error, Md.Code Ann. Art. 48A, § 40(1), (4), thereby allowing plaintiffs to argue ERISA pre-emption in the state court appeal. *E.g., Metropolitan Life, supra* (considering issue of ERISA pre-emption on appeal from MIA hearing decision). This review fulfills the third criteria for *Younger* abstention.

4. *Younger Exceptions*

■ Notwithstanding the presence of the factors that ordinarily command *Younger* abstention, the possibility remains that a plaintiff may face "great and immediate" irreparable injury sufficient to render abstention inappropriate. *Younger,* 401 U.S. at 46, 91 S.Ct. at 751 (quoting *Fenner v. Boykin,* 271 U.S. 240, 243, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926)). In *Younger,* the court noted two categories of situations that would present such an injury.

■ First, the Court should not abstain if plaintiffs can show that the state official is bringing the action in bad faith or for the purpose of harassment, *Younger,* 401 U.S. at 47–49, 54, 91 S.Ct. at 752–53, 755, or if the state agency is "incompetent by reason of bias to adjudicate the issues pending before it." *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973); *accord Kugler v. Helfant,* 421 U.S. 117, 124, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1975) ("if extraordinary circumstances render the state court incapable of fairly and fully adjudicat-

---

**3.** *Charleston Area Medical Center, Inc. v. Blue Cross and Blue Shield Mut., Inc.,* 6 F.3d 243 (4th Cir.1993), discussed abstention pursuant to *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and *Burford v. Sun Oil Co.,* 319 U.S.

315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), rather than *Younger* abstention. *Charleston,* 6 F.3d at 250 n. 5. Nonetheless, the interests of comity and of respect for the States's interest in regulating insurance translate well to this context.

ing the federal issues before it," *Younger* abstention is inapplicable) (quotation marks omitted); *Cinema Blue, Inc. v. Gilchrist*, 887 F.2d 49, 54 (4th Cir.1989), *cert. denied*, 494 U.S. 1030, 110 S.Ct. 1479, 108 L.Ed.2d 616 (1990). The parties do not suggest, nor does the Court perceive, that these cases present such a situation.

 Second, the Court will find "great and immediate" irreparable injury if the state law under which the state prosecutes plaintiffs "flagrantly and patently" violates the Constitution. *Younger*, 401 U.S. at 53–54, 91 S.Ct. at 755 (quoting *Watson v. Buck*, 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941)). A "facially conclusive" preemption challenge may fall within this category, *e.g.*, *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir.1991); *Baggett v. Dep't of Professional Regulation*, 717 F.2d 521, 524 (11th Cir.1983), although neither the Supreme Court nor the Fourth Circuit has yet decided the issue. *NOPSI*, 491 U.S. at 367, 109 S.Ct. at 2517–18; *Martin Marietta*, 38 F.3d at 1402. Plaintiffs rely on this exception.

 *Younger*, however, does not permit the exercise of jurisdiction merely upon an allegation that federal law pre-empts the state law in question. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602, 95 S.Ct. 1200, 1207, 43 L.Ed.2d 482 (1975); *Simopoulos v. Virginia State Bd. of Medicine*, 644 F.2d 321, 328–29 (4th Cir.1981). Rather, to remove a case from *Younger's* ambit, a pre-emption claim must be "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger* 401 U.S. at 53–54, 91 S.Ct. at 755 (quoting *Buck*, 313 U.S. at 402, 61 S.Ct. at 967).

The instant claims do not satisfy this rigorous standard. If plaintiffs' benefit plans are fully-insured MEWAs, then ERISA does not preclude Maryland from regulating them, and if they are not, Maryland may not regulate them. 29 U.S.C. § 1144(b)(6)(A). To decide the pre-emption issue, then, the Court

must determine whether the plans are in fact "fully-insured." "[W]hat requires further factual inquiry can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention determination." *NOPSI*, 491 U.S. at 367, 109 S.Ct. at 2518; *see Int'l Ass'n of Entrepreneurs of America Benefit Trust v. Foster*, 883 F.Supp. 1050, 1062–66 (E.D.Va. 1995) (analyzing ERISA pre-emption of MEWAs). Consequently, plaintiffs have failed to place these cases within the "facially conclusive" pre-emption exception to *Younger*, nor have they shown any other reason to avoid *Younger* abstention.

## III. CONCLUSION

 These cases invoke the interests of comity and federalism with which *Younger* is concerned. The *Middlesex* criteria for *Younger* abstention are satisfied, and none of the exceptions to *Younger* are present. Accordingly, the Court shall dismiss these cases by separate Order.[4]

---

4. The Court dismisses rather than stays these actions because no possibility exists that the action will return to federal court. *Cf. Harris*

*County Comm'rs Court v. Moore*, 420 U.S. 77, 88–89, 95 S.Ct. 870, 877–78, 43 L.Ed.2d 32 (1975).