**Leon KAPLAN, Plaintiff**

v.

**CAREFIRST, INC., et al., Defendants.**

**Civil No. L–08–3512.**

United States District Court, D. Maryland.

May 13, 2009.

---

Ward B. Coe, III, Hillary A. Hussin, Mark Spencer Saudek, Gallagher Evelius and Jones LLP, Baltimore, MD, for Plaintiff.

Randolph Stuart Sergent, Venable LLP, Baltimore, MD, for Defendants.

### *MEMORANDUM*

BENSON EVERETT LEGG, Chief Judge.

This action arises from a dispute surrounding post-termination payments allegedly due to Plaintiff Leon Kaplan ("Kaplan") following his termination from Defendant CareFirst, Inc. ("CareFirst")

on April 30, 2008. Kaplan raises one federal claim pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), and related breach of contract causes of action under Maryland statutory and common law. CareFirst now moves to dismiss the Complaint, asserting that this Court should abstain from hearing the case pursuant to the doctrine announced by the Supreme Court in *Younger v. Harris*. On April 4, 2008, the Court granted Mr. Tyler's ("Tyler") unopposed Motion to Intervene, and Tyler joined CareFirst's Motion to Dismiss. After briefing was complete, the Court heard oral argument on April 16, 2009, and is now prepared to issue a decision. For the reasons stated below, the Court will GRANT the Defendants' Motion to Dismiss.

## I. INTRODUCTION

### A. *Regulatory Framework*

CareFirst is a nonstock corporation, licensed as a "nonprofit health service plan" under Title 14, Subtitle I of the Maryland Insurance Article. As such, CareFirst is exempt from taxation and subject to extensive state regulation aimed at ensuring that CareFirst carries out its nonprofit purpose of "provid[ing] affordable and accessible health insurance." *See* Md. Ins. Code §§ 14–101, *et seq.* Tyler, in his capacity as the Maryland Insurance Commissioner, serves as the head of the Maryland Insurance Administration ("MIA"). The Commissioner is responsible for enforcing the provisions of the Insurance Article and may conduct examinations, investigations, and hearings as necessary to fulfill the

purposes of the Article. Md. Ins.Code §§ 2–108 and 2–210. The Commissioner is also authorized to issue administrative orders enforceable by a court of competent jurisdiction. Md. Ins.Code §§ 2–201, 204. Any person aggrieved by a Final Order of the Commissioner may pursue an appeal to the Circuit Court for Baltimore City or, if the person is an individual, to the circuit court of the county where he or she resides. Md. Ins.Code § 2–215.

In 2003, the Maryland General Assembly enacted new provisions of the Insurance Article in order to regulate compensation for officers and employees of nonprofit health service plans.[1] *See* Md. Ins.Code § 14–139(c) and (d). Section 14–139(c) provides that a "director, trustee, officer, or employee" of a nonprofit health service plan "may only approve or receive from the assets of the corporation fair and reasonable compensation in the form of salary, bonuses, or perquisites for work actually performed for the benefit of the corporation." The 2003 amendments authorize the Commissioner to issue orders prohibiting any payments that are determined to "exceed[ ] the amount authorized under the approved guidelines." Md. Ins.Code § 14–139(d)(5).

### B. *Factual Background*

CareFirst hired Kaplan as its Executive Vice President of Operations in December 2000, pursuant to the terms of an employment contract (the "Employment Agreement"). The Employment Agreement contemplated the award of substantial post-termination payments in the event Kaplan was fired without cause and not in

---

1. The Maryland General Assembly enacted § 14–139(c) and (d) on May 22, 2003 in response to the Commissioner's Order disapproving the proposed conversion of CareFirst to for-profit status through an acquisition by WellPoint Health Networks, Inc. *See* Order and Report of the Maryland Insurance Administration Regarding the Proposed Conversion of the CareFirst, Inc. to For–Profit Status and Proposed Acquisition by WellPoint Health Networks, Inc. MIA No. 2003–02–032 (March 5, 2003).

connection with a change in control, and covered some amounts payable under plans governed by ERISA. At the time of Kaplan's termination, CareFirst was in the midst of an administrative proceeding concerning the legality of its proposed post-termination benefits and compensation payable to William Jews ("Jews"), the former CEO of CareFirst. In light of the pending proceedings, CareFirst delayed issuing post-termination payments to Kaplan until the Commissioner had ruled in the *Jews* matter. During that time, CareFirst continued to pay Kaplan's base salary and limited benefits as they came due.

On July 14, 2008, after conducting a four-day administrative hearing, the Commissioner issued a Final Order and Statement of Reasons, which determined that Jews was entitled to one-half of the proposed termination payments specified in his employment contract.[2] Jews noticed an appeal of the Commissioner's decision to the Circuit Court for Baltimore County pursuant to § 14–139(h)(4). On August 11, 2008, Jews filed a complaint in this Court seeking a declaration that ERISA preempted the MIA's Final Order and that the Commissioner's application of § 14–139(c) violated the United States Constitution. On January 19, 2009, we dismissed Jews' action on grounds that the *Younger* doctrine required the Court to abstain in deference to the administrative appeal pending in the Circuit Court for Baltimore County. *See Jews v. Tyler*, No. 08–2075 (D.Md. Jan. 19, 2009) (order granting motion to dismiss).

On September 24, 2008, CareFirst's Compensation Committee reviewed the post-termination payments due Kaplan pursuant to the terms of the Employment Agreement and expressed concern over a potential violation of § 14–139(c). Consequently, CareFirst notified the Commis-

sioner that Kaplan was seeking a substantial post-termination payment in excess of $6.7 million. *See* Docket No. 6, Exh. 5. The Commissioner decided to investigate the matter, in order (a) to analyze the terms and conditions of the compensation and severance provisions of Kaplan's Employment Agreement, and (b) to determine whether the post-termination payment complied with § 14–139(c). *See* Docket No. 6, Exh. 8. During the investigation, the Commissioner held meetings with CareFirst and Kaplan, received correspondence from both parties, and posed questions to counsel.

On January 26, 2009, the CareFirst Compensation Committee determined that a payment of approximately $2.7 million was consistent with the requirements of § 14–139(c). *See* Docket No. 6, Exh. 7. This amount included a continuation of Kaplan's base salary for a period of two years, continuation of certain benefits for a period of twelve months, a portion of Kaplan's target annual incentive plan ("AIP") for 2008, Kaplan's outstanding long-term incentive plan ("LTIP") grants, and his deferred LTIP account. *Id.* The amounts that were not deemed "fair and reasonable" compensation pursuant to § 14–139(c) included Kaplan's benefits under CareFirst's executive retirement plan ("SERP") and the balance of his AIP for 2008. *Id.*

On February 5, 2009, the Commissioner issued an Order authorizing CareFirst's payment to Kaplan of the $2.7 million approved by the Compensation Committee. Docket No. 6, Exh. 8. The Commissioner agreed that CareFirst would violate § 14–139(c) if it were to pay Kaplan the remaining $4 million. *Id.* On March 6, 2009, Kaplan submitted a request for an administrative hearing challenging the Commis-

---

**2.** *See* Final Order, MIA Case No. MIA–2007–10–027.

sioner's Order, as permitted under the Insurance Code and Maryland Regulations. *See* Md. Ins.Code § 2–210(a)(2)(ii); COMAR 31.02.01.03. The request was granted and the hearing was referred to Associate Deputy Commissioner Karen Hornig for adjudication. The hearing is scheduled to begin on July 20, 2009.

On December 31, 2008, Kaplan filed suit in this Court seeking recovery of his ERISA plan benefits pursuant to his cause of action under § 502(a)(1)(B). Docket No. 1. The Complaint also asserts state law causes of action for breach of contract, promissory estoppel and violation of the Maryland Wage Payment and Collection statute. *Id.* On February 9, 2009, Care-First moved to dismiss the action on the ground that this Court should abstain pursuant to the doctrine announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Docket No. 6.

## II. ANALYSIS

With respect to the issues presented, this case substantially overlaps with *Jews.* Similar to this case, Jews' complaint sought a declaration that ERISA preempted the Commissioner's application of § 14–139(c) to restrict payments due him pursuant to an employment contract with Care-First. The Court determined that *Younger* abstention was appropriate due to the pendency of an administrative appeal pending in the Maryland state courts. Although the procedural posture of Kaplan's case is slightly different than Jews' case, the *Younger* analysis remains largely the same.

■ The *Younger* doctrine is founded upon principles of comity and federalism, and rests upon the notion that "the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44,

91 S.Ct. 746. A federal court considering a claim for abstention pursuant to *Younger* must weigh the competing interests of two important policy considerations—the duty to respect ongoing state proceedings and the obligation to ensure that federal rights are vindicated. *Telco Commc'ns v. Carbaugh*, 885 F.2d 1225, 1236 (4th Cir.1989). We note, however, that *Younger* abstention "does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced." *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 626, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).

■ The Court must consider the test laid out in *Middlesex Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432–437, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) in deciding whether abstention is appropriate in this case. Accordingly, we will discuss the following factors: (1) whether there is an ongoing state judicial proceeding, (2) whether the proceeding implicates important state interests, and (3) whether there is an adequate opportunity to raise federal claims in the state proceeding. *Middlesex*, 457 U.S. at 432–37, 102 S.Ct. 2515.

### A. *Ongoing State Judicial Proceedings*

■ The main point of dispute in this case concerns whether the state administrative proceedings can be considered "ongoing" for purposes of *Younger.* A state proceeding is "ongoing" if it was initiated "before any proceedings of substance on the merits have taken place in the federal court." *Haw. Housing Authority v. Midkiff*, 467 U.S. 229, 238, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (internal quotations omitted). In applying this test, litigation concerning abstention does not qualify as a "proceeding of substance." The Fourth

Circuit has stated that if "the only issue addressed in the federal court is abstention, the federal suit has not proceeded to the point that it can overcome a *Younger* challenge." *Certa v. Harris,* No. 01–1132, 2001 WL 1301404, at *2, 2001 U.S.App. LEXIS 22976, at *9 (4th Cir. Oct. 26, 2001) (citing *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975)).

■ Kaplan claims that the operative date for determining whether the state administrative proceedings are "ongoing" is December 31, 2008—the day he filed his federal Complaint. Because the Commissioner did not issue his Order until February 5, 2009, Kaplan argues that there was no "ongoing" proceeding at that time. In fact, it is Kaplan's position that there can be no "ongoing" proceeding until the administrative hearing is underway.

In support of this position, Kaplan relies upon the decision in *Telco Communications, Inc. v. Carbaugh,* 885 F.2d 1225, 1228 (4th Cir.1989). In *Telco,* the Fourth Circuit held that *Younger* abstention was not appropriate when the only existing state "proceeding" was a preliminary fact-finding conference requested by the Commissioner of Consumer Affairs to investigate whether to bring a formal enforcement action. This meeting was informational only and did not necessarily trigger any further steps toward an administrative enforcement action. *Id.* at 1228. At all times during the litigation in *Telco,* the enforcement proceeding had not yet begun and might never begin. As a result, the plaintiff could not reasonably anticipate whether the administrative investigation would ever develop into a formal administrative enforcement action.

*Id.* at 1229 ("Appellant's contention—that abstention is required whenever enforcement is threatened—would leave a party's constitutional rights in limbo while an agency contemplates enforcement but does not undertake it."). Accordingly, the Fourth Circuit held that "the period between the threat of enforcement and the onset of formal enforcement proceedings" was not an "ongoing proceeding" for purposes of *Younger. Id.*

In contrast, when the Commissioner issues an order pursuant to § 14–139, the order is binding and sets in motion a series of administrative hearings and appeals, all of which are described with particularity in the statute and administrative regulations.[3] The Commissioner's Order vested Kaplan with a statutory right to pursue an appeal through an administrative hearing. *See* Md. Ins.Code § 2–210.[4] Following the hearing, Kaplan may seek judicial review of those proceedings in the Maryland state courts. *See* Md. Ins.Code § 2–215.

It is of no moment that Kaplan's federal Complaint was filed prior to the issuance of the Commissioner's Order and administrative hearing. *See Doran v. Salem Inn, Inc.,* 422 U.S. 922, 929, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (*Younger* abstention was appropriate "even though the state prosecution was commenced the day following the filing of the federal complaint"). *See also Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) (holding that "where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in

---

3. In this case, the hearing will be conducted pursuant to § 2–210 of the Insurance Article and the hearing procedures prescribed by regulation in COMAR 31.02.01.01 *et seq.*

4. We also note that Kaplan, unlike the plaintiff in *Telco,* was on notice from the date of his termination that he was likely to be subject to the same protracted administrative proceedings as Mr. Jews experienced.

the federal court, the principles of *Younger v. Harris* should apply"). For purposes of *Younger,* the determinative factors of our analysis are that the Commissioner's Order is now operative, a state administrative proceeding is pending, and no substantive issues (aside from the abstention motion) have been heard in this Court.

Finally, we refer again (as in the *Jews* matter) to the line of cases holding that a party who wishes to challenge a state order or judgment must first exhaust the remedies—both administrative and judicial—provided by statute. See *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 608, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Moore v. City of Asheville,* 396 F.3d 385, 388 (4th Cir. 2005). The Fourth Circuit in *Laurel Sand & Gravel, Inc. v. Wilson,* 519 F.3d 156, 167 (4th Cir.2008) held that when a litigant "seeks to invalidate a state judgment by filing a federal action and circumventing state-court judicial remedies, the state proceedings remain 'pending' within the meaning of *Younger* abstention." The court's reasoning in *Laurel Sand* was grounded in the notion that "federal intervention before a state court has had the opportunity to review an agency's decision is no less an aspersion on the capabilities and good-faith of state appellate courts and no less a disruption of the State's efforts to protect interests which it deems important." *Id.* (internal quotations and citations omitted). It follows from *Moore* that if a plaintiff is prohibited from "short-circuiting" an administrative proceeding before the appeals process has been properly concluded, Kaplan is likewise barred from circumventing the administrative proceeding altogether, simply by filing suit in federal court before the administrative hearing has occurred. We find, therefore, that the MIA proceedings are "ongoing" for purposes of *Younger* and that no proceedings of substance have occurred in this

Court. Accordingly, the first *Middlesex* factor has been satisfied.

### B. *Important State Interest*

The second *Middlesex* requirement of an important state interest is satisfied by demonstrating that the state has a "substantial, legitimate interest" in regulating the insurance industry. *New Orleans Public Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 365, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (*"NOPSI"*). It is well established in the Fourth Circuit that state regulation of the insurance industry implicates "policy problems of substantial public import and state interest." *Charleston Area Medical Center, Inc. v. Blue Cross and Blue Shield Mutual, Inc.,* 6 F.3d 243, 250 n. 5 (4th Cir.1993). See *Fuller v. Bartlett,* 894 F.Supp. 874, 879 (D.Md.1995) ("The importance of Maryland's interest in regulating insurance strongly favors abstention."). Congress explicitly stated in the McCarran–Ferguson Act that the power to regulate the insurance industry is vested with the states. 15 U.S.C. §§ 1011–1015; *Prudential Ins. Co. v. Benjamin,* 328 U.S. 408, 429, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946). *See SEC v. Variable Annuity Life Ins. Co. of Am.,* 359 U.S. 65, 69, 79 S.Ct. 618, 3 L.Ed.2d 640 (1959) (the regulation of insurance "has traditionally been under the control of the states").

█ Here, the Insurance Commissioner claims that the controversy clearly implicates the important state interest in regulating insurance. Kaplan disagrees, contending that § 14–139(c) is aimed at regulating executive compensation rather than the industry of insurance. In making this argument, Kaplan analogizes to a line of ERISA cases dealing with the complicated question of whether conflicting state laws are "saved" from preemption.

As a general matter, ERISA broadly preempts all state laws that "relate to" employee benefit plans. 29 U.S.C. § 1144(a). The statute, however, explicitly excepts from preemption state "laws ... which regulate insurance." 29 U.S.C. § 1144(b)(2)(A) (the "savings clause"). When faced with a facially valid claim that a state insurance law is preempted by ERISA, courts must determine whether the law is nevertheless "saved" from preemption. The test for determining whether a state law "regulates insurance" requires that: (1) the state statute "must be specifically directed toward entities engaged in insurance"; and (2) it "must substantially affect the risk pooling arrangement between the insurer and the insured." *Ky. Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329, 342–43, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003). Kaplan asserts that § 14–139(c) has nothing to do with "risk pooling," and, therefore, is not a law which "regulates insurance."

This analysis, however, is premised upon an assumption not grounded in the case law. Kaplan offers no precedent authorizing this Court to borrow a test for determining whether a state law "regulates" insurance in the context of ERISA preemption when analyzing the second prong of the *Middlesex* test. It has already been established that Maryland has a substantial interest in regulating the insurance industry and executing its insurance statutes through the authority of the MIA. Accordingly, we find that the second *Middlesex* factor is satisfied.

### C. *Adequate Opportunity*

As in the *Jews* case, the third *Middlesex* factor likewise weighs in favor of abstention. Central to the Supreme Court's decision in *Younger* was the recognition that "state courts are fully competent to decide issues of federal law" and that, as a matter of course, "all state and federal claims should be presented to the state courts." *Richmond, Fredericksburg, & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 251 (4th Cir.1993) (citations omitted). In keeping with the principles of comity and federalism emphasized in *Younger,* the Court recognizes that the Circuit Court for Baltimore City (or County)[5] is fully competent to litigate Kaplan's ERISA benefits claim, along with his administrative appeal and state law causes of action. Although the factual record of Kaplan's case will be developed before the Insurance Commission, rather than before a state or federal trial court, this factor does not counsel against abstention. *See Ala. Pub. Serv. Comm'n v. Southern R. Co.,* 341 U.S. 341, 348, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) ("The fact that review in the Alabama courts is limited to the record taken before the Commission presents no constitutional infirmity."). So long as Kaplan has the opportunity to raise his federal claims in the state court review of the administrative proceedings, the "intervention of a federal court is not necessary for the protection of [his] federal rights." *Id.* at 349, 71 S.Ct. 762. *See Ohio Civil Rights Comm'n v. Dayton,* 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (*Younger* applies to "state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim").[6] Accord-

---

**5.** *See* Md. Ins.Code § 2–215.

**6.** See *Jews v. Tyler,* No. 08–2075 (D.Md. Jan. 19, 2009) (order granting motion to dismiss) for a more detailed discussion of the levels of review available in the Maryland courts.

ingly, all three *Middlesex* factors counsel in favor of abstention.

## III. ERISA PREEMPTION

■ Alternatively, Kaplan asserts that his federal Complaint must be heard in a federal forum because it is distinct from the pending administrative proceeding in which he is challenging the legality of § 14–139(c). At oral argument, counsel for Mr. Kaplan emphasized and relied upon the expansive language of the Supreme Court's decisions clarifying the broad reach of the ERISA statute. According to Mr. Coe, these decisions mandate that Kaplan's ERISA claim must be heard in a federal forum. Indeed, the Supreme Court stated in *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), that "the express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Id.* at 45–46, 107 S.Ct. 1549 (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)). *Pilot Life* also reaffirmed that the plan-enforcement provisions of ERISA § 502(a) were intended to be "the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." *Id.* at 52, 107 S.Ct. 1549. At oral argument, Mr. Coe specifically relied upon the language in *Pilot Life* stating that § 502(a) of ERISA entitles Kaplan to "prompt and fair claims settlement procedures." *Id.* at 54, 107 S.Ct. 1549.

■ The *Pilot Life* decision does not, however, support the result that Kaplan would have us reach—namely, to allow his claim for ERISA benefits to proceed in this Court, wholly separate from the pending administrative proceeding (and subsequent state court review) in which he challenges the Commissioner's application of § 14–139(c). In *Pilot Life,* an employer attempted to obtain a benefit through a state common law tort and contract suit, rather than through a federal ERISA suit. *Id.* at 43, 107 S.Ct. 1549. Consequently, the Supreme Court determined that ERISA's broad preemption provisions mandated that ERISA § 502(a) was respondent's sole and exclusive vehicle for asserting a benefits claim. *Id.* at 54, 107 S.Ct. 1549 (noting that "the policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA"). By contrast, § 14–139(c) exists as a supplemental obligation upon CareFirst that also has an incidental effect on Kaplan's employee benefits. Section 14–139(c) is not a "state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). Rather, § 14–139(c) is primarily an insurance regulation that prohibits certain types of compensation for the employees of nonprofit health service plans.

We agree that the remedy Kaplan seeks pursuant to ERISA § 502(a)(1)(B) is, in fact, an "exclusively [ ] federal concern." *Alessi,* 451 U.S. 504, 523, 101 S.Ct. 1895 (1981). But the exclusively "federal" nature of Kaplan's cause of action does not necessitate that his claim be pursued solely in a federal court. *See Employers Res. Mgmt. Co. v. Shannon,* 65 F.3d 1126, 1137 (4th Cir.1995) (rejecting "the argument that the preeminence of federal law somehow precludes consideration of federal law in the context of a state administrative proceeding"). *Total Plan Services, Inc. v. Texas Retailers Ass'n,* 925 F.2d 142, 145

(5th Cir.1991) (noting that "simply because an area of law is federal, the proper forum to make that determination is not necessarily federal as well").

Section 502(a)(1)(B) authorizes pension beneficiaries to bring civil actions in order to recover benefits or enforce or clarify rights under the terms of their pension plans. *See* 29 U.S.C. § 1132(a)(1)(B). This plan-enforcement remedy, unlike other ERISA enforcement provisions, explicitly grants concurrent jurisdiction to the state courts. 29 U.S.C. § 1132(e)(1). *See* H.R. Conf. Rep. No. 93–1280, at 327 (1974), 1974 U.S.C.C.A.N. 5038, at 5107 ("With respect to suits to enforce benefit rights under the plan or to recover benefits under the plan ... they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction."). *See also Livolsi v. Ram Constr. Co.*, 728 F.2d 600, 602–603 (3d Cir.1984) (whereas "federal courts were intended to have exclusive jurisdiction over cases alleging a violation of a particular provision of ERISA or a particular provision of an ERISA plan," (i.e. the (a)(3) causes of action), the relief available under § 502(a)(1)(B) is available in both federal and state courts).[7]

Kaplan's assertion of a claim for benefits under § 502(a)(1)(B) does not necessarily entitle him to a federal forum. Congress has carved out an exception to the broad preemptive power of ERISA for laws "regulate insurance." Moreover, the statute explicitly grants concurrent jurisdiction in the state courts for claimants seeking benefits pursuant to § 502(a)(1)(B). As a result, Kaplan's argument that only a federal court may hear his ERISA benefits claim is unavailing. Where Congress has deemed the state courts equally competent to hear such claims, we are not required to sustain Kaplan's federal suit when there is already an ongoing proceeding at the state level.

## IV. CONCLUSION

■ The Court concludes that it should abstain from hearing this case pursuant to the *Younger* doctrine.[8] The only significant factual difference between this case and the *Jews* matter is the stage at which the state administrative proceedings had progressed by the time the federal suit was initiated. In the *Jews* case, the federal suit was filed after the administrative hearing had concluded, a Final Order Is-

---

**7.** Similarly, the Second Circuit in *Levy v. Lewis*, 635 F.2d 960, 966–67 (2d Cir.1980) explained that Congress' grant of concurrent jurisdiction for § 502(a)(1)(B) causes of action demonstrates that "while Congress was aware of the novel and uniquely federal nature of most rights created by ERISA, it was also aware that the state courts would be fully capable of deciding claims for breaches of ERISA plans, claims which are closely analogous to ordinary contract actions." *See* 29 U.S.C. § 1132(e). *See also Brandenburg v. Md. Savings & Loan Depositors Comm.*, 859 F.2d 1179 (4th Cir.1988) (where federal jurisdiction over RICO claims was not exclusive to the federal courts, abstention was appropriate).

**8.** Although we have decided to abstain under the *Younger* doctrine, we note that other ab-

stention doctrines might also be appropriate. For instance, the doctrine expressed in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) could alternatively apply to these facts. *Burford* permits abstention when federal adjudication would "unduly intrude" upon "complex state administrative processes" because: (1) "there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or (2) "exercise of federal review would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

sued, and Jews had noticed his appeal in the Circuit Court for Baltimore County. In the instant case, an Order has now issued from which Kaplan has exercised his statutory right to appeal through an administrative hearing. This hearing is set for July 20, 2009, and the briefing schedule is underway. The Court concludes, therefore, that there is currently an "ongoing" state court proceeding with which the continuance of this federal suit would interfere.

Because it is appropriate for this Court to abstain from hearing Kaplan's case, we shall GRANT Defendants' Motion to Dismiss by separate Order.